Douglas Wayne FOUNTAIN, Appellant
(Defendant–Petitioner),

v.

Eleanore Sarah MITROS, Appellee
(Plaintiff–Respondent).

No. 97–126.

Supreme Court of Wyoming.

Dec. 8, 1998.

Rehearing Denied Jan. 5, 1999.

Philip White Jr., Laramie, WY, for Appellant.

Mary Elizabeth Galvan, Laramie, WY, for Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

LEHMAN, Chief Justice.

Appellant Douglas Wayne Fountain (Father) appeals the district court's final order of child support payments to Eleanore Mit-

---

* Chief Justice at time of expedited case confer-    ence;  retired November 2, 1998.

ros (Mother) for the support of their daughter. Father claims the district court abused its discretion in calculating his annual income and in failing to apply the "shared physical custody" provision. W.S. 20–6–304(d) (1997). Finding sufficient evidence was presented to support the district court's decision, we affirm.

## ISSUES

Father presents three issues for review:

I. Did the trial court erroneously calculate both parents' net incomes and thereby erroneously calculate the presumptive child support figure?

II. Did the trial court err by refusing to apply the "shared physical custody" statute (W.S. § 20–6–304(d)) "to apportion the child support obligation between the parents in proportion to the amount of time the children spend with each parent," *Cranston v. Cranston*, 879 P.2d 345, 349 (Wyo.1994)?

III. Did the trial court err in ordering Mr. Fountain to pay $1,150 or $1,250 in arrears for the period July, 1996, to March, 1997, when no evidence was ever introduced or received as to how much Mr. Fountain paid during that time and how much he was in arrears?

Mother states the issues as:

I. Whether the district court erred by denying appellant's petition to relieve him of his child support obligation based on the shared custody provisions of Wyo. Stat. § 20–6–304(d).

II. Whether the district court's computation of the parties' respective net incomes for purposes of calculating appellant's presumptive child support obligation is unsupported by the weight of the evidence.

III. Whether the district court erred in making appellant's increased child support obligation retroactive to July 1, 1996, pursuant to the conditions of an order staying execution of its order modifying appellant's child support obligation.

## FACTS

Father and Mother, divorced on May 11, 1988, had one child during their marriage. The Decree of Divorce, incorporating the parties' stipulation and agreement, gave Mother primary custody subject to Father's liberal visitation rights. In addition to alternating weekend and holiday visitation and six weeks summer visitation, the agreement gave Father three weekdays and nights per week so long as Mother worked at night. In the event Mother worked during the day, Father would have visitation no less than two days during the week. Father was to pay $75.00 per month in child support, increasing to $150.00 per month when the child reached the age of 6 years. In addition, Father agreed to pay for the child's medical insurance.

On February 1, 1996, Father filed a Petition for Review and Adjustment Pursuant to W.S. 20–6–306 (Rpl.1994) alleging that application of the presumptive child support calculations would result in a decrease of 20% or more per month in child support. Mother counterclaimed for increased support.

Trial to the court was heard on May 13, 1996. The heart of the controversy was the actual amount of Father's income and whether payment from the Harvest Foursquare Church (Harvest) was included on his federal income tax return. The parties also disagreed whether a $650.00 per month payment for the use of the first floor of Father's house as a residence for the poor should be considered income. Finally, there was conflicting testimony as to the level of Father's contribution to the child's needs over and above the child support he paid.

On June 18, 1996, the district court issued its decision letter, finding that Father failed to show a 20% reduction in his child support obligation. The court also found that Mother paid "the lion's share" of the child's expenses and, therefore, denied Father's petition for modification. The district court found that Father's annual net income amounted to $27,688.00, adding together his income from Harvest, the $650.00 monthly mortgage contribution, and the total net income claimed on his business tax form. As a result, the court increased Father's child support obligation to $430.38 per month.

The district court's decision spawned several post-trial motions from Father, including a motion for reconsideration, a motion for new trial and, in the alternative, a motion to alter or amend the judgment. Father claimed that the district court erroneously included his income from Harvest twice in the support calculations and also contended that, if the mortgage contribution was to be considered as income, he should be allowed to deduct half as his wife's income and the legitimate business expenses therefrom. Finally, Father claimed that the court's determination that his contribution was not sufficient to warrant modification was contrary to *Cranston v. Cranston*, 879 P.2d 345 (Wyo. 1994) and W.S. 20–6–304(d). Father also requested a new trial on the basis of "surprise," claiming that "[b]ecause the Petitioner's income tax returns were prepared by an accountant and were signed and filed under penalty of perjury, Petitioner's counsel could not have reasonably anticipated that the Court would expect Petitioner to present evidence to support" the preparation of the return.

According to the parties' briefs, the district court heard oral argument on the post-hearing motions. On January 24, 1997, a second decision letter issued, which stated in relevant part:

Based on all of the factors in this case the Court concludes that a modification in the amount of child support in this case is warranted. Upon reconsideration of this matter the Court has redetermined that a partial modification will be granted.

Making the calculation, the Court is persuaded that Petitioner does provide for "addition[al] contributions" but that the legal custody of the child is "primary" custody, not joint custody so as to bring the calculations under the lesser schedule for all purposes; this notwithstanding the considerable percentage of actual physical custody in the "non-custodial" parent. In all other respects, except for the provision of "additional contributions," modification will be denied and the original decree stands as *res judicata.*

Based on the considerations in W.S. 20–6–304(b), the district court concluded that Fa-ther's obligation should be set at $300.00 per month. An order incorporating the second decision letter was signed by the district court on May 22, 1997. This timely appeal followed.

### STANDARD OF REVIEW

▮▮▮ Review of a district court's decision on a modification of child support is limited to whether the district court abused its discretion. *Cranston v. Cranston*, 879 P.2d 345, 348 (Wyo.1994). "Abuse of discretion occurs when a court exceeds the bounds of reason or commits an error of law." *Id.* (quoting *Combs v. Sherry–Combs*, 865 P.2d 50, 55 (Wyo.1993)). As we have often stated:

Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.

*Nowotny v. L & B Contract Industries, Inc.*, 933 P.2d 452, 460 (Wyo.1997); *see also Basolo v. Basolo*, 907 P.2d 348, 353 (Wyo.1995); *Mintle v. Mintle*, 764 P.2d 255, 257 (Wyo. 1988).

### DISCUSSION

#### I. Calculation of Income

▮▮▮ We must first determine whether there is sufficient evidence in the record to support the district court's calculation of Father's income for purposes of the child support guidelines. In reviewing a challenge to the sufficiency of the evidence, we accept the evidence of the successful party as true and give all favorable inferences to that evidence, leaving out of consideration entirely the conflicting evidence of the unsuccessful party. *Cranston*, 879 P.2d at 351.

▮▮▮ Income is defined in W.S. 20–6–301(a)(i) (Rpl.1994) in pertinent part as

any form of payment or return in money or in kind to an individual, regardless of source. Income includes, but is not limited to wages, earnings, salary, commission, compensation as an independent contractor, ... unemployment compensation, disability, annuity and retirement benefits, and any other payments made by any pay-

or, but shall not include any earnings derived from overtime work. . . .

The income used to calculate the child support obligation is "net income," defined as "income" less personal income taxes, social security deductions, and other specific expenses enumerated in § 20–6–301(a)(ii).

■ Father contends that his income from Harvest was counted twice in the calculation of his gross income. At trial, Father testified that his income was derived primarily from two sources: his general contractor business and his position as assistant pastor at Harvest Church. He stated that the total in 1995 from both sources was $11,777, after deducting social security and health insurance. In support of his testimony, Father submitted his federal income tax form (which he characterizes as solely the product of his accountant) and his "business ledger."

The determination of Father's true income is indeed frustrating from the record he provided, and we appreciate the difficult position of the district court. To begin, the federal income tax form includes a Schedule C, in which the profit or loss from Father's contracting business is reported. Under the section "other income," father reported a total of $11,400.00. An attachment to the Schedule C states that this income is from Harvest Church. The attachment does not, however, indicate that this amount was income received for his pastoral duties. Instead, the parties agree that, if properly reported, this amount would indicate money paid to Father's contracting business. Father denied that his business received this amount but, claiming ignorance of the reporting requirements, stated his accountant is provided supporting documentation and determines how his income is reported. However, Father failed to provide any supporting documentation as to his income from Harvest, even though he stated that every year the church "sends me a signed and stamped document that records all the amounts that were given to me over the year." Father did not call his accountant as a witness.

Review of Father's handwritten "business ledger" only stirs already murky waters. Expenses noted are without explanation, job references, or even check numbers. Although one reference is made to Harvest Church in 1994, the payment appears to be followed by expenses for materials used for a job. In addition, child support payments written on the business checks were submitted to the district court, but there were no corresponding references in the business ledger. No supporting documentation was provided to assist in interpreting the sketchy accounting of profit and losses.

During cross-examination, it was discovered that Father failed to report additional income. Father testified that he receives at least $650.00 per month as a contribution toward his house payment. Father's explanation for the omission of this income is that:

> The house is a Resurrection House, is a nonprofit organization, and we own the house, literally, but we—the house was given over for the purpose of nonprofit organization, so it is in, like I said, the house is in our name, but all of the—any kind of finances that are put into it go simply for the purpose of the ministry, and I'm not exactly sure how—it is not like a direct income benefit to me, and it pays the house, the bills there, but the house is simply for the ministry benefit.

Again, without any documentary support, Father attempts to dispel the notion that payments which cover the bills and part of the mortgage of the home he is purchasing are not income. Neither did he provide any testimony regarding what portion of that money should be considered income to his wife. These payments were nowhere to be found on his joint income tax return.

Based on this record, Father now asserts that the district court abused its discretion in disregarding his unsubstantiated testimony. Indeed, Father claims unfair surprise that the district court would not rely solely on his tax returns. Wyoming Statute 20–6–302(e) (Rpl.1994) prescribes the evidence required to substantiate income:

> (e) Financial affidavits of the parties shall be supported with documentation of both current and past earnings. Suitable documentation of current earnings includes but is not limited to pay stubs, employer statements, or *receipts and expenses if selfem-*

*ployed.* Documentation of current earnings *shall be supplemented* with copies of the most recent tax return to provide verification of earnings over a longer period. (Emphasis added.)

■ The trial court enjoys a wide latitude in determining income when the obligor has not provided the records necessary to make findings in strict conformity with the statute. *See County of Ramsey v. Shir,* 403 N.W.2d 714, 717 (Minn.App.1987) *review denied* (refusing to consider complaint about the calculation of net income because obligor failed to provide adequate documentation). Given the total lack of adequate proof along with Father's treatment of income, both reported and unreported, which reflects squarely upon his credibility, and affording all inferences favorable to the prevailing party, we are unable to find that the district court abused its discretion by finding his income higher than that which he reported on his income tax returns.

Father also claims that the district court abused its discretion in failing to deduct Father's social security and medical insurance expenses, allowing a deduction for Mother's voluntary pension payments, and failing to add to Mother's income the $50.00 per month paid by Father for the child's insurance. The modified order was issued after argument to the district court. Father did not provide a record of that hearing. However, the district court presumably took into account these alleged errors when it decreased Father's support obligation from $430.38 per month, as set by the court's initial determination, to $300.00 per month. We find no abuse of discretion warranting reversal.

## II. Application of Shared Physical Custody Provision

■ Father contends that the district court erred in refusing to reduce his child support obligation pursuant to the shared physical custody provision of the child support guidelines. Section 20–6–304(d) provides:

(d) When each parent keeps the children overnight for more than forty percent (40%) of the year and both parents contribute substantially to the expenses of the

children in addition to the payment of child support, a joint presumptive support obligation shall be determined by use of the tables. After the joint presumptive child support obligation is derived from column three of the tables, that amount shall be divided between the parents in proportion to the net income of each. The proportionate share of the total obligation of each parent shall then be multiplied by the percentage of time the children spend with the other parent to determine the theoretical support obligation owed to the other parent. The parent owing the greater amount of child support shall pay the difference between the two (2) amounts as the net child support obligation.

There is no dispute that Father meets the overnight requirement found in the statute. However, Father must also show that he contributes to the expenses of the child in a substantial manner. *Cranston,* 879 P.2d at 350. Father contends that overwhelming evidence established his substantial contribution, and that the district court so found in its decision letter modifying Father's support payment from $430.38 to $300.00 per month. Father posits that the district court failed to apply the provision only because Father did not have joint legal custody of his daughter. He relies on the language in the decision letter on reconsideration which stated:

[T]he Court is persuaded that Petitioner does provide for "addition[al] contributions" but that the legal custody of the child is "primary" custody not joint custody so as to bring the calculations under the lesser schedule for all purposes; this notwithstanding the considerable percentage of actual physical custody in the "non-custodial" parent.

Father is correct that the shared custody provision is not limited to situations involving a joint custody order. However, our reading of the district court's decision letter yields an interpretation which differs from Father's. We believe that the district court was referring to the language in *Cranston* where we stated:

A parent who keeps the children overnight the required percentage of the year

and pays a child support obligation has not satisfied the three requirements of Wyo. Stat. § 20–6–304(d). Evidence must also support a finding that both parents substantially contributed to the expenses of the children. The legislative intent to encourage both parents' involvement in the financial maintenance of their children requires this degree of participation. Otherwise, a potentially onerous burden would be imposed on one parent. *It must be remembered that many expenses of maintaining the children's primary residence, including mortgage or rent, continue unabated during visitation periods with the other parent.* Compart v. Compart, 417 N.W.2d 658, 662 (Minn.App. 1988).

*Cranston*, 879 P.2d at 350 (emphasis added). It is appropriate for the court to consider expenses inherent in the primary custodianship of the child. Moreover, the district court's determination that Father provided additional contribution does not necessarily equate to the "substantial" contribution required by the statute. We must, therefore, determine whether the evidence of Father's contributions mandates the application of the shared physical custody statute or whether the factors enumerated in W.S. 20–6–302(b) [1] were available to reach a just and equitable result.

As evidence of his "substantial contribution," Father points to his testimony stating he provides and pays for all of the child's needs while at his house, providing her with her own room, piano lessons at $20.00 per month, educational supplies, clothing, numerous outdoor trips and outdoor clothing for their activities together, and an expensive bicycle for her birthday. Father submitted several canceled checks, but stated he was unable to substantiate many of these expenses because cash was used to purchase the items.

On the other hand, Mother testified that because the child was older and needed more privacy, she had given up rental income to provide her with her own room. (Vol II, p. 99). Mother testified that Father did not contribute to her school clothes and intimate apparel, although Father purchased five or six items of used clothing during the last school year. Mother stated that Father refused to contribute toward the school supplies required at the beginning of the school year and that Mother paid for all school lunches, all medication, and had covered the total medical bill on two or three occasions. Mother also testified that her daughter's growth required several new pairs of shoes each year and that she needed child support to provide the basic items needed. Extras provided by Mother included swimming lessons, choir supplies, flute lessons, a bicycle for home and one for Father's house, which was sold to help pay for the new bicycle purchased by Father.

Given Mother's evidence, we do not find an abuse of discretion in the determination that Father failed to show a "substantial" contribution and that Father should continue payment of child support. It is clear that the district court considered the contributions made by Father and the time his daughter spent at his home, concluding that a $130.00 decrease from the presumptive support amount was appropriate. This determination was certainly not beyond the bounds of reason, and we see no reason to disturb the district court's order.

\* \* \* \* \*

(iii) Any special health care and educational needs of the child;

\* \* \* \* \*

(v) The value of services contributed by either parent;

\* \* \* \* \*

(xiii) Other factors deemed relevant by the court.

The Order on Petitioner's Motion for Reconsideration listed each of the above statutory considerations as the bases for a deviation from the presumptive support of $430.38 to $300.00 per month.

---

1. Wyoming Statute 20–6–302(b) provides in part:

    (b) A court may deviate from the presumptive child support ... upon a specific finding that the application of the presumptive child support would be unjust or inappropriate in that particular case. In any case where the court has deviated from the presumptive child support, the reasons therefor shall be specifically set forth fully in the order or decree. In determining whether to deviate from the presumptive child support established by W.S. 20–6–304, the court shall consider the following factors:

    (i) The age of the child;

### III. Payment of Arrearages

Father's final complaint is that the district court ordered payment of arrearages to Mother without evidence that Father had failed to pay support as ordered. However, the record reveals there was an order, requested by Father, staying payment of his increased obligation during the pendency of his motion for reconsideration. We therefore find this claim without merit.

### CONCLUSION

Father cannot rely on his own failure to provide required documentation of his income to support a claim that the district court abused its discretion when calculating Father's income. Neither does Father demonstrate that the district court erred in refusing to apply the shared physical custody provision. We find that the evidence presented was carefully considered by the trial court and provided a sound basis for its decision.

Affirmed.