2002 WY 180

**Douglas Malcolm WATSON,
Appellant (Defendant),**

v.

**Darla Louise WATSON, Appellee
(Plaintiff).**

No. 02–24.

Supreme Court of Wyoming.

Dec. 17, 2002.

Dwight F. Hurich of Hurich Law Office, Gillette, Wyoming, Representing Appellant.

Tad T. Daly and Patrick G. Davidson of Daly Law Associates, P.C., Gillette, Wyoming, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶ 1] In response to his former spouse's Petition for Modification of Child Visitation, the appellant, Douglas M. Watson (father), counterclaimed to modify his child support obligation due to a financial change. The district court held a hearing and subsequently denied the father's counterclaim. On appeal, the father argues that the district court erred in recalculating his child support obligation by adding back to his income the business expense he deducted from his federal income tax pursuant to Internal Revenue Code (IRC) 26 U.S.C.A. § 179 (2002) (Section 179). We reverse and remand to the district court for recalculation of the father's child support obligation.

**ISSUES**

[¶ 2] The issues on appeal are:

A. The district court erred by disallowing, for the purpose of child support

* Chief Justice at time of expedited conference.

computations, the Section 179 expense claimed by the father.

B. The district court erred in computing the net incomes of both parties when calculating the presumed child support so as to not find a twenty percent decrease in presumed support, and thus, modifying the father's child support obligation downward.

## FACTS

[¶ 3] The father and the appellee, Darla L. Watson (mother), married in 1987, subsequently had two children, and divorced in 1999. In the divorce decree, the district court awarded the mother primary custody of the children, awarded the father visitation rights, and ordered the father to pay child support in the amount of $818.00 per month. On August 22, 2000, the mother filed a Petition for Modification of Child Visitation.[1] The father filed his answer on September 8, 2000, and counterclaimed requesting that the district court modify the original divorce decree by recalculating his child support obligation based on the parties' current incomes. The district court held a hearing on January 31, 2001, and denied the father's counterclaim because the twenty percent threshold of Wyo. Stat. Ann. § 20-2-311 (LexisNexis 2001) was not met.[2]

## STANDARD OF REVIEW

[¶ 4] A district court has broad discretion in determining the correct amount of a child support award. This Court will disturb a district court's ruling only upon a showing that the district court abused its discretion. *Jordan v. Brackin*, 992 P.2d 1096, 1098 (Wyo.1999). We have stated that: " 'Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound

judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.' " *Vaughn v. State*, 962 P.2d 149, 151 (Wyo. 1998) (*quoting Martin v. State*, 720 P.2d 894, 897 (Wyo.1986)).

## DISCUSSION

### SECTION 179 EXPENSE

[¶ 5] A party seeking to modify a child support order must show, pursuant to Wyo. Stat. Ann. § 20-2-311, that a material change in circumstances occurred subsequent to entry of the original divorce decree. The father argues that, based on his current income and applying the presumptive support guidelines found in Wyo. Stat. Ann. § 20-2-304 (LexisNexis 2001), he should be paying twenty percent less than what he is presently ordered to pay. The father, a rancher, testified that his ranch operation had changed since the divorce,[3] and he now receives a monthly salary of $1,000.00 ($841.00 after deductions) as opposed to the $3,500.00 per month the district court determined at the time of the divorce. He further testified that he receives in-kind income amounting to $450.00 per month in the form of housing, transportation, gasoline, utilities, and groceries, and that he has been depleting his retirement savings since May 1999 in order to support his modest lifestyle.

[¶ 6] In calculating child support, the first step is to determine the parents' current monthly net incomes and then to apply the total amount to the tables as set forth in the statutes. Wyo. Stat. Ann. § 20-2-304. Income is defined, in part, in Wyo. Stat. Ann. § 20-2-303(a)(ii) (LexisNexis 2001):

> "Income" means any form of payment or return in money or in kind to an individual, regardless of source. Income includes, but

---

1. Visitation is not at issue in this appeal.

2. Wyo. Stat. Ann. § 20-2-311(a) states, in part: "Any party ... may petition for a review and adjustment of any child support order.... The petition shall allege that, in applying the presumptive child support established by this article, the support amount will change by twenty percent (20%) or more per month from the amount of the existing order."

3. The father and his parents joined their sole proprietorship ranches into a corporation effective January 1, 2000, with their land being held by a limited liability company (LLC). The father owns forty percent of the corporation and forty percent of the LLC.

is not limited to wages, earnings, salary, commission, compensation as an independent contractor, temporary total disability, permanent partial disability and permanent total disability worker's compensation payments, unemployment compensation, disability, annuity and retirement benefits, and any other payments made by any payor, but shall not include any earnings derived from overtime work unless the court, after considering all overtime earnings derived in the preceding twenty-four (24) month period, determines the overtime earnings can reasonably be expected to continue on a consistent basis. In determining income, *all reasonable unreimbursed legitimate business expenses shall be deducted.*

(Emphasis added.) The income used to calculate the child support obligation is "net income," defined as:

"Net income" means income as defined in paragraph (ii) of this subsection less personal income taxes, social security deductions, cost of dependent health care coverage for all dependent children, actual payments being made under preexisting support orders for current support of other children, other court-ordered support obligations currently being paid and mandatory pension deductions. Payments towards child support arrearage shall not be deducted to arrive at net income[.]

Wyo. Stat. Ann. § 20–2–303(a)(iii).

▇ [¶ 7] At issue in the instant case is whether a Section 179 expense deduction claimed by the ranch corporation for the benefit of the father can be used to lower the father's monthly net income. Citing *Houston v. Smith*, 882 P.2d 240 (Wyo.1994), the district court disallowed the Section 179 expense and included that amount in calculating the father's net income. The district court reasoned that such deductions were "depreciation," being more properly written off over several years, which should be added back to income, as in *Houston,* for the purpose of calculating a child support obligation.

[¶ 8] The district court concluded that the father's monthly income amounted to $2,950.00, resulting in a child support obligation of $692.35 per month. This did not satisfy the twenty percent rule required by Wyo. Stat. Ann. § 20–2–311, so the district court denied the father's counterclaim. The father does not dispute addition of forty percent of the LLC's depreciation and amortization back to income, but does take issue with the Section 179 deduction being added back to income. We, too, disagree with the district court's treatment of the Section 179 deduction.

[¶ 9] The pertinent subsections of Section 179 that apply in the instant case are 179(a), 179(d)(1), and 179(d)(10). Section 179(a) provides: "A taxpayer may elect to treat the cost of any section 179 property as an expense which is not chargeable to capital account. Any cost so treated shall be allowed as a deduction for the taxable year in which the section 179 property is placed in service." 26 U.S.C.A. § 179 at 688. Section 179(d)(1) reads: "For purposes of this section, the term 'section 179 property' means any tangible property . . . and which is acquired by purchase for use in the active conduct of a trade or business." *Id.* at 690. Section 179(d)(10) provides: "The Secretary shall, by regulations, provide for recapturing the benefit under any deduction allowable under subsection (a) with respect to any property which is not used predominantly in a trade or business at any time." *Id.* at 691–92.

[¶ 10] In general, Section 179 property is used in the active conduct of a taxpayer's trade or business that would be subject to depreciation but for the election. *See* 4 Fed. Tax Guide Rep. (CCH) ¶ 12,126.01 (2002). Without an election under Section 179, the cost of such property would be treated as capital expenditure, and the cost would be recovered as depreciation over a period of years pursuant to IRC 26 U.S.C.A. §§ 167(a) and 168. However, when Section 179 property is sold, any gain is recognized as ordinary income to the extent of amounts expensed and depreciation claimed. *See* 4 Fed. Tax Guide Rep. (CCH) ¶ 12,126.01.

[¶ 11] In 2000, the ranch corporation claimed $20,000.00 in Section 179 expenses for the purchase of eleven bulls and a horse. Since the father owned forty percent of the corporation, forty percent of the allowable

$20,000.00 Section 179 expense [4] or $8,000.00, passed through to the father, which he claimed on his personal federal income tax for the year 2000. The father asserts that the Section 179 deduction should not be added back to his income as "depreciation." He argues that, whereas depreciation is added back to income because it does not reflect an actual cash expenditure, a Section 179 deduction reflects an actual cash expenditure, reducing available resources from which to pay child support.

[¶ 12] The states are split on the issue of whether certain business expenses such as Section 179 deductions should be added back to income in determining child support obligations.[5] In *Major v. Major*, 124 N.M. 436, 952 P.2d 37 (1997), the court dealt with a situation somewhat similar to the instant case. In *Major*, the father raised cattle and sold his cull cattle in the spring, purchasing impregnated cattle to replace the cull cattle. *Id.* at 38. The *Major* court reviewed several cases that discussed determining the net income of self-employed parents, and stated:

> The lesson we glean from these cases is that we are more concerned with a parent's actual cash flow than we are with income as represented on tax returns. . . . We do not rely on technical treatments more appropriate for accounting and tax purposes unless there is evidence that those technical treatments bear some relation to actual cash flow.

*Id.* at 39. Regarding Section 179 expenses, the *Major* court stated:

> The limitation imposed by the trial court comes from Section 179 of the Internal Revenue Code. This section allows a taxpayer to elect to treat the cost of depreciable property purchased for use in the ac-

tive conduct of a trade or business as an expense in the year the property is placed in service, rather than as property that is capitalized and thereafter subject to depreciation over a number of years. . . . It is designed to " 'encourage additional investment in small business since it provides for a faster recovery of capital before the taxing of earnings.' " *Smyers v. Commissioner of Internal Revenue*, 57 T.C. 189, 203, 1971 WL 2598 (1971) (*quoting* H.R. Rep. 85–2198 (1958)). Additionally, since the property is immediately expensed, there is no need to maintain a depreciation schedule on these assets.

*Major*, 952 P.2d at 39. The *Major* court continued:

> Mother argues that this case comes down to an analysis of depreciation. She appears to be arguing that because Father depreciates the cattle over a period of years, he cannot expense them as inventory in one year. That is not what is happening here. Rather, Father is requesting that, when the trial court determines his income for child support purposes, it deduct as a necessary business expense the annual cost of replenishing his breeding herd. Again, how that cost is treated for income tax purposes is not necessarily relevant to determining income for child support.

*Id.* at 40.[6]

■ [¶ 13] A Section 179 deduction reflects a cash expenditure made during the year in question, whereas depreciation taken in years subsequent to the initial year property is placed in service does not reflect cash expenditures made in those subsequent years. We note, however, the similarity between a Section 179 deduction and that of

---

4. The applicable amounts allowed for Section 179 expenses are: Tax year 1997, $18,000.00; 1998, $18,500.00; 1999, $19,000.00; 2000, $20,000.00; 2001 or 2002, $24,000.00; 2003 or thereafter, $25,000.00. 26 U.S.C.A. § 179(b)(1) at 688–89.

5. *See, e.g., In re Marriage of Knickerbocker*, 601 N.W.2d 48, 51 (Iowa 1999); *Preussner v. Timmer*, 414 N.W.2d 577, 579 (Minn.App.1987); *Gammel v. Gammel*, 259 Neb. 738, 612 N.W.2d 207, 211–12 (2000); and *Labar v. Labar*, 557 Pa. 54, 731 A.2d 1252, 1255–56 (1999). *See also* Frank J.

Wozniak, *Treatment of Depreciation Expenses Claimed for Tax or Accounting Purposes in Determining Ability to Pay Child or Spousal Support*, 28 A.L.R. 5th 46 (1995).

6. Those jurisdictions that consider Section 179 expenses as "depreciation" to be added back to income for computing child support obligations appear to ignore the recapture provision of Section 179(d)(10). In the instant case, the father's accountant testified that, when the Section 179 animals are sold in later tax years, the income will then be treated as ordinary income.

depreciation taken in the year in which property is placed in service, which typically reflects an actual cash expenditure made during that year. However, we conclude that when courts consider business expenses, they should make allowance for expenses that are actually necessary for the parent to sustain his or her business and that are unreimbursed business expenses. In determining a parent's income for a presumptive child support obligation, " 'all reasonable unreimbursed legitimate business expenses shall be deducted.' " *Roseman v. Sackett*, 979 P.2d 940, 943 (Wyo.1999); Wyo. Stat. Ann. § 20–2–303(a)(ii).

[¶ 14] We distinguish the instant case from *Houston*, where we considered depreciation of real property and adopted this rationale: " 'Since the purpose of depreciation is to assist a person in *regaining* their expenditures, it does not follow that depreciation is a business *expense* for the calculation of disposable income under the Guidelines.' " *Houston*, 882 P.2d at 244 (*quoting Stewart v. Stewart*, 243 Mont. 180, 793 P.2d 813, 815 (1990)) (emphasis in original). We held that depreciation of rental properties failed to fit within the statute's definition of "reasonable unreimbursed legitimate business expenses" and concluded that it could not be deducted from income for child support purposes because it constituted a book reimbursement. *Houston*, 882 P.2d at 244. However, a Section 179 expense differs from depreciation in that it directly affects business cash flow and a parent's disposable income. It is this distinction that makes a Section 179 expense more closely resemble the mortgage principal payments we allowed to be deducted from income in *Fleenor v. Fleenor*, 992 P.2d 1065, 1070 (Wyo.1999) than the depreciation we disallowed as a deduction from income in *Houston*.

[¶ 15] We conclude that the district court abused its discretion in calculating the father's monthly net income. The Section 179 deduction in this case may have been a reasonable unreimbursed legitimate business expense that should not have been added back to income in determining child support obligations. In its decision letter, the district court did not, however, make that determina-tion. Instead, it concluded only that the amount "would more properly be written off over several years without this special section . . . ." But for child support computation purposes, the question is not whether an amount should be depreciated over time for tax purposes or whether it should be treated as an expense in the current tax year under Section 179. The question is whether it was a "reasonable unreimbursed legitimate business expense" under Wyo. Stat. Ann. § 20–2–303(a)(ii).

[¶ 16] We reiterate what we said in both *Fleenor* and *Houston*: the focus should be upon the reasonable and legitimate nature of the expense and its impact on the party's actual cash flow in the year in question rather than the treatment of the expense by federal law in the context of income taxes. The rationale of *Houston* was that book depreciation does not reduce actual net income. *Houston*, 882 P.2d at 244. The rationale of *Roseman* was that the child support payor had failed to prove that the amounts he claimed were reasonable business expenses. *Roseman*, 979 P.2d at 943. The rationale of *Fleenor* was that, after the payor established that the expenses were reasonable expenses that directly affected business cash flow and his own disposable income, the payee failed to prove that the payments were unreasonable. *Fleenor*, 992 P.2d at 1070. That is the type of analysis required in cases of this nature. A central question in that analysis is whether the questioned expenses were unreasonably excessive or the assets were acquired to depress income to avoid support payments. *Id.* at 1069. The burden of proving that an expense was a reasonable unreimbursed legitimate business expense lies with the party seeking the deduction. *Erhart v. Evans*, 2001 WY 79, ¶ 15, 30 P.3d 542, 546 (Wyo.2001); *Fountain v. Mitros*, 968 P.2d 934, 938 (Wyo.1998).

[¶ 17] One court has commented that "were we not to treat Section 179 deductions as depreciation pursuant to the Nebraska Child Support Guidelines, a self-employed parent could distort his or her income in any given year by purchasing depreciable property and deducting the cost pursuant to Section 179, thereby reducing income available for

child support." *Gammel v. Gammel*, 259 Neb. 738, 612 N.W.2d 207, 212 (2000). That, of course, is true; a scheming non-custodial parent could seek to manipulate his or her income in such a manner. But the opposite is also true; if in computing child support, a court automatically rejects a business expense that has been afforded Section 179 treatment, that court has not fulfilled its obligation under Wyo. Stat. Ann. § 20–2–303(a)(ii) to determine whether the amount should be deducted as a reasonable and legitimate business expense. Either course is wrong. The proper course is to make the statutory determination.

### NET INCOME COMPUTATION

[¶ 18] The father next alleges that the district court erred in computing the net incomes of both parties when calculating the presumed child support so as not to find a twenty percent decrease in presumed support, and thus modifying the child support obligation downward. In its decision letter, the district court found that the net monthly income of the mother was $2,043.00. Unfortunately, the record does not disclose how the district court calculated the mother's monthly income.[7] There is no factual basis from which we can conclude whether this truly reflects her net income. On remand, the district court should set forth in its decision letter its computations of both parties' incomes.

### CONCLUSION

[¶ 19] The district court erred when it added the Section 179 expense deduction back to the father's income in determining his child support obligation, without first having made a determination whether the expense was a reasonable unreimbursed legitimate business expense under the statute. We reverse and remand to the district court for recalculation of the parties' monthly incomes consistent with this opinion and a

---

7. The record does disclose a Contract of Employment for the mother at the Northern Wyoming Community College for the school year 2000–2001, which indicates a nine-month salary of $27,375.00. On an annualized basis, this

determination of the father's appropriate child support obligation.

amounts to a gross monthly income of $2,281.25. How the district court arrived at a net monthly income of $2,043.00 is not discernable from the record.