2003 WY 121

**K.C. James READY, Appellant (Defendant),**

v.

**Janelle Louanne READY, Appellee (Plaintiff).**

No. 02–149.

Supreme Court of Wyoming.

Sept. 26, 2003.

Representing Appellant: Wendy Press Sweeny, Worland, Wyoming.

Representing Appellee: Chris Edwards of Simpson, Kepler & Edwards, LLC, Cody, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1] A non-custodial father moved to modify the child support and alimony provisions of his 1998 divorce settlement and decree. The district court did reduce the father's child support obligation, but still ordered an amount higher than the presumptive statutory amount. The court declined to terminate the father's alimony ob-

ligation. The father appeals the alimony and child support orders as well as the court's refusal to make the child support modification retroactive to the date the father filed his motion. Finding no abuse of discretion by the trial court, we affirm.

## ISSUES

[¶ 2] K.C. James Ready, the father and appellant, presents the following issues:

I.   Did the trial court err in its use of the tax returns in ascertaining child support?

II.   Did the trial court err in deviating from the child support guidelines and increasing the child support due and owing by the Appellant?

III.   Did the trial court err in refusing to retroactively apply the reduction in child support to the date of the petition being served on the Appellee?

IV.   Did the trial court err in refusing and failing to modify the decree of divorce as to the payment of alimony?

[¶ 3] Janelle Louanne Zinn, mother and appellee, states the issue as whether the trial court abused its discretion in any of the four areas presented by the father.

## FACTS

[¶ 4] K.C. James Ready (father) married Janelle Louanne Ready, now known as Janelle Louanne Zinn (mother) in 1981. They divorced in 1998. The divorce decree incorporated the parties' settlement agreement and awarded custody of their three children—then ages 15, 13 and 11—to their mother. The father was granted visitation and ordered to pay child support of $709 per month, plus $200 per month alimony until the youngest child graduates from high school in June of 2005.

[¶ 5] Before the divorce, the father was employed in Cody, Wyoming, as a branch manager for a grocery store chain. He earned $38,000-$50,000 per year with bonuses. The mother, who has a bachelor's degree in elementary education and an associate's degree in music, was self-employed as a daycare provider and piano teacher. She earned less than $12,000 in the year before the

divorce. As part of the divorce settlement, the mother was awarded the family home in Cody, while the father moved to his family's farm in Thermopolis, Wyoming.

[¶ 6] Both parties have changed their employment since the divorce. The father became a grocery store branch manager in Worland, but was terminated at the end of 1998 after he was hurt in a fall from a horse. The store has since closed, and the father has not sought work again in that occupation. At the time of the modification hearing he was an apprentice electrician in training to become a journeyman electrician. He also worked odd jobs and was renovating a home for re-sale. The mother took a job in a doctors' office immediately after the divorce decree in September 1998 and was earning $10 per hour, with insurance benefits, in 2001. Just before the modification hearing, she went to work for the State of Wyoming at $13.50 per hour with no fringe benefits. She remarried in July 2001.

[¶ 7] The parties' oldest son turned 18 in 2001 and is attending college. His mother testified that she would have to provide him with approximately $125 per month to assist with his college expenses. She also spends one to two hours per day tutoring the second child, who is hearing impaired.

[¶ 8] Upon the father's motion for modification, the district court terminated the father's child support obligation for the oldest son. The court then calculated the presumptive level of support for the two remaining minor children using the parties' 2000 income as the most representative of their current earning ability. The court determined the father's 2000 earnings were approximately $19,500, and that his $2,036 refund of 1999 taxes received in 2000 should also be counted as income because it represented over-with-holding. His monthly average income was therefore $1,800. The court found the mother's income to be $1,508 per month and determined that her tax refund should not be counted because it was due to her charitable contributions.

[¶ 9] Using those income figures, the district court determined the presumptive level of support under the governing statute to be $470 but also determined that deviation up-

ward to $635 was appropriate based upon six other factors, including:

- the father's choice to reside in an economically depressed area where work in his profession is unavailable;
- the special healthcare and educational needs of the parties' second child;
- the mother's contribution of tutoring services for their hearing-impaired son;
- the father's failure to exercise his right to overnight visitation with his daughter;
- the mother's cash assistance to the oldest son in college;
- the father's expectation of eventual profit from the house he is renovating.

[¶ 10] The court also declined to terminate the father's $200 per month alimony obligation because it was part of a comprehensive property and child custody agreement, because the alimony is to terminate on a specific date, and because the agreement "was also apparently geared to a consideration of the needs of the children of the parties."

## STANDARD OF REVIEW

[¶ 11] Our role in reviewing petitions to modify child support is well established:

There are few rules more firmly established in our jurisprudence than the proposition that disposition of marital property, calculation of income for child support purposes, and the granting of alimony are committed to the sound discretion of the district court. *Johnson v. Johnson,* 11 P.3d 948, 950 (Wyo.2000). Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Id.; Vaughn v. State,* 962 P.2d 149, 151 (Wyo. 1998). We must ask ourselves whether the trial court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious. *Johnson,* 11 P.3d at 950. In accomplishing our review, we consider only the evidence in favor of the

successful party, ignore the evidence of the unsuccessful party, and grant to the successful party every reasonable inference that can be drawn from the record. *Id.*

*Belless v. Belless,* 2001 WY 41, ¶ 6, 21 P.3d 749, ¶ 6 (Wyo.2001).

The party seeking modification must establish there has been a material and substantial change in circumstances which outweighs the interest of society in applying the doctrine of *res judicata. Pauling v. Pauling,* 837 P.2d 1073 (Wyo.1992); *Crawford v. Crawford,* 828 P.2d 1192 (Wyo. 1992); *Dorr v. Newman,* 785 P.2d 1172 (Wyo.1990); *Mentock v. Mentock,* 638 P.2d 156 (Wyo.1981). The trial court is vested with discretion to modify the provisions of the divorce decree and, absent a grave abuse of that discretion, we will not disturb its decision. *Parry v. Parry,* 766 P.2d 1168 (Wyo.1989); *Manners v. Manners,* 706 P.2d 671 (Wyo.1985). The standard we apply in review of cases asserting abuse of discretion as an issue is whether the trial court reasonably could have concluded as it did. *Rude v. State,* 851 P.2d 20 (Wyo.1993), and *Parry* (both citing *Martinez v. State,* 611 P.2d 831 (Wyo.1980)).

*Pasenelli v. Pasenelli,* 2002 WY 159, ¶ 9, 57 P.3d 324, ¶ 9 (Wyo.2002) (quoting *Jones v. Jones,* 858 P.2d 289, 291 (Wyo.1993)).

This policy manifests a balance between the doctrine of finality of judgments which is supported by the doctrine of *res judicata* and the statutes providing for modification of the provisions of a decree relating to child custody, support, and alimony. The trial court is charged with resolving that tension, and it must do so in the exercise of discretion. The discretion afforded the trial judge is encompassed in Wyo. Stat. § 20–6–302(b). The discretion is guided by a list of thirteen factors, but the final one, "[o]ther factors deemed relevant by the court * * *," is a classic acknowledgment of judicial discretion.

The child support guidelines identify a base from which the judge must invoke the exercise of discretion. In the absence of an agreement with respect to child support, the guidelines will have a more significant controlling impact. When an agreement as to child support is involved, however, more weight may be given to the agreement. Child support agreements entered into by the parties are favored by the courts. *Beard v. Beard,* 368 P.2d 953 (Wyo.1962).

*Smith v. Smith,* 895 P.2d 37, 41 (Wyo.1995).

## DISCUSSION

[¶ 12] Child support is calculated pursuant to statute. The first step is to calculate the parents' current monthly net income for application to the presumptive child support tables. Wyo. Stat. Ann. § 20–2–304 (LexisNexis 2003). "Income" and "net income" are defined in Wyo. Stat. Ann. § 20–2–303(a) (LexisNexis 2003) as follows:

(ii) "Income" means any form of payment or return in money or in kind to an individual, regardless of source. Income includes, but is not limited to wages, earnings, salary, commission, compensation as an independent contractor, temporary total disability, permanent partial disability and permanent total disability worker's compensation payments, unemployment compensation, disability, annuity and retirement benefits, and any other payments made by any payor, but shall not include any earnings derived from overtime work unless the court, after considering all overtime earnings derived in the preceding twenty-four (24) month period, determines the overtime earnings can reasonably be expected to continue on a consistent basis. In determining income, all reasonable unreimbursed legitimate business expenses shall be deducted. Means tested sources of income such as Pell grants, aid under the personal opportunities with employment responsibilities (POWER) program, food stamps and supplemental security income (SSI) shall not be considered as income. Gross income also means potential income of parents who are voluntarily unemployed or underemployed;

(iii) "Net income" means income as defined in paragraph (ii) of this subsection less personal income taxes, social security deductions, cost of dependent health care coverage for all dependent children, actual payments being made under preexisting

support orders for current support of other children, other court-ordered support obligations currently being paid and mandatory pension deductions. Payments towards child support arrearage shall not be deducted to arrive at net income[.]

[¶ 13] The father first argues on appeal that the district court erred in its use of the parties' most recent tax returns to ascertain their income for determining child support under the statutory guidelines. He claims this violates our ruling in *Houston v. Smith*, 882 P.2d 240 (Wyo.1994), in which we held that "federal income tax computations differ in significant respects from the computations required by [the child support statute], and the district court erred in substituting the federal income tax concepts to arrive at those critical amounts." *Id.* at 240–41.

[¶ 14] In *Houston*, the district court had followed the federal income tax computation by deducting from the obligor's income, as an "unreimbursed legitimate business expense," the amortized depreciation for business property to which obligor was entitled on his federal taxes. Since amortized depreciation does not directly affect cash flow in later years, we ruled that it was not appropriate, for child support purposes, to recognize the same deduction from income as federal tax law allows. "Since the purpose of depreciation is to assist a person in **regaining** their expenditures, it does not follow that depreciation is a business **expense** for the calculation of disposable income under the Guidelines." *Id.* at 244 (quoting *Stewart v. Stewart*, 243 Mont. 180, 793 P.2d 813, 815 (1990)) (emphasis in original).

[¶ 15] In *Watson v. Watson*, 2002 WY 180, 60 P.3d 124 (Wyo.2002), we dealt with the other side of that coin and the federal tax provision under 26 U.S.C.A. § 179 which allows a taxpayer to elect a same-year deduction for certain business property rather than an amortized deduction over a number of years. In calculating income for child support purposes, the district court, based on our ruling in *Houston*, had not allowed a deduction from income for the Section 179 business expenses. In reversing again, we clarified that the test is whether the business expense affects the obligor's actual cash flow

during the year in question, rather than a mere book entry for federal tax purposes. Since the Section 179 property is actually paid for in the same year in which the deduction is allowed, it does affect cash flow in that year and we allowed the deduction for child support purposes. *Watson*, ¶¶ 14–16.

[¶ 16] In neither *Houston* nor *Watson*, however, did we state a per se prohibition, as the father in this case implies, on the use of federal tax information as evidence in determining "income" and "net income" under the Wyoming child support statutes. In fact, in all child support proceedings, the parties are **required** to submit to the court financial affidavits with supporting documentation that includes copies of their most recent tax returns. Wyo. Stat. Ann. § 20–2–308(a), (b) (LexisNexis 2003). The 2000 tax year was the most recent one available at the time of the hearing. A review of the record in this case shows that the court considered the father's receipt of a significant tax refund in 2000 for overpaid 1999 taxes as a matter affecting his cash flow during the year 2000. The father would have us base his child support obligation not on his actual after-tax income, but rather on an income that is artificially reduced by temporary overpayment of taxes. That would not comport with the statutory and case law definitions of income.

[¶ 17] The father also complains for the first time on appeal that the court did not take into consideration his unreimbursed business expenses. However, he offered no evidence of any such expenses beyond a general statement that he had costs associated with the remodeling of a home. As we also stated in *Watson* at ¶ 16, "[t]he burden of proving that an expense was a reasonable unreimbursed legitimate business expense lies with the party seeking the deduction. *Erhart v. Evans*, 2001 WY 79, ¶ 15, 30 P.3d 542, 546 (Wyo.2001); *Fountain v. Mitros*, 968 P.2d 934, 938 (Wyo.1998)." The court need not speculate about such expenses where none were claimed. In light of the above, the father has not demonstrated and we cannot say that the trial court exceeded the bounds of reason by using the parties' reported 2000 federal income tax wages as

the basis for calculating presumptive child support.

[¶ 18] The father next argues that the trial court erred in deviating from the presumptive child support guidelines. The parties' income as determined by the court resulted in a presumptive child support figure of $470 per month. The court, however, exercised its discretion under § 20–2–307 to deviate from that figure, increasing it by $165 to $635 per month. As required by the statute, the court set forth its reasons for the deviation. The father has chosen to reside in an economically depressed area where work in his former profession, at which he earned up to $50,000 per year, is not available. The parties' second son has a hearing disability, requiring additional expense for hearing aids and battery replacement. The mother, who has an education degree, contributes tutoring services for the hearing-impaired son, which otherwise would have to be purchased for him. The father at the time of the hearing was not exercising his right to overnight visitation with his daughter and, although not articulated by the trial court, would therefore not be incurring the additional meal and other incidental expenses he would incur if she were spending time in his home. The mother anticipated providing approximately $125 per month in cash assistance to the oldest son, who is now in college. Finally, the father is renovating a house for re-sale and in that sense anticipates additional self-employment income from the profit on the house. These considerations clearly fall within those factors listed in § 20–2–307 which justify deviation from the presumptive child support level.

[¶ 19] In *Pasenelli*, 2002 WY 159, ¶ 11, 57 P.3d 324, ¶ 11 (Wyo.2002), we reiterated that a district court has broad discretion in determining the proper amount of a child support award, and that we will not disturb the trial court's ruling unless there is a clear showing of an abuse of discretion. Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Id.* (citing *Vaughn v. State*, 962 P.2d 149, 151 (Wyo.1998)). While another judge or even this Court may have weighed those factors differently and reached a different figure for child support in this case, we cannot conclude from the record that the trial court could not reasonably have concluded as it did.

[¶ 20] Father next claims error in the trial court's issuing its order prospectively only, even though the father had requested that any reduction in child support be made retroactive to the filing of his motion, as allowed by Wyo. Stat. Ann. § 20–2–311(d)(ii). Again, this is a decision within the sound discretion of the trial court, one which will be disturbed on appeal only upon a clear showing of abuse. *Houston*, 882 P.2d at 245. The father alleges unreasonable delay from the filing of his original motion to the date of the court's order. The original petition was filed pro se on November 21, 2000; it was amended in April 2001, after the father obtained an attorney. Hearings were held in June and July 2001, and the court announced its decision from the bench on July 26, 2001. That decision date coincided with the oldest child's 18th birthday, when father was no longer obligated to pay support for him. We cannot conclude that a decision on a petition to modify a divorce decree, entered four months after the amended petition was filed, constituted unreasonable delay, nor that it was an abuse of discretion to make the change effective when one of the children became emancipated.

[¶ 21] Finally, the father claims an abuse of discretion in not terminating his alimony obligation. The trial court has authority to revise and alter the alimony provision of a divorce decree. Wyo. Stat. Ann. § 20–2–116 (LexisNexis 2001). Such a revision requires the moving party to demonstrate a substantial change in circumstances from the time of the divorce to the time of the petition to modify. *Dorr v. Newman*, 785 P.2d 1172, 1178 (Wyo.1990). In this case, only two years had elapsed between the date of the decree and the date of the original petition to modify. At the time of the divorce, Mr. Ready had already left the family home in Cody and relocated to Thermopolis. Although he had made more money in some

previous years, at the time of the decree his income was found to be $2,270.59 per month. At the time of the modification hearing in 2001, he was making approximately 80% of that amount, with the prospect of improvement upon completion of his electrical apprenticeship.

[¶ 22] As with the modification of child support, the decision to modify an alimony provision of a divorce decree lies with the sound discretion of the trial court and will not be disturbed on appeal absent clear abuse. *Belless*, ¶ 6. We have noted also that " 'the purpose of alimony is to provide a post-divorce substitute for the support provided to a spouse during the marriage,' and that an award of alimony requires evaluation of the financial needs of each party and is affected by a determination of child custody." *Carlton v. Carlton*, 997 P.2d 1028, 1034 (Wyo. 2000) (quoting in part *Reavis v. Reavis*, 955 P.2d 428, 435 (Wyo.1998)). The trial court was cognizant of this standard, and that the alimony in this case was part of a comprehensive stipulation that encompassed support, property division, assignment of debts and alimony until the youngest child turns eighteen.

[¶ 23] The husband offers evidence that his income has decreased and his ex-wife's increased between the date of the decree and the date of the modification petition. However, we have recognized that it is entirely within the discretion of the trial court to award alimony during a transition period wherein the party requesting alimony may gain special skills, education, or experience to enable the party to raise his or her earning capacity. *Belless*, ¶ 11 (citing *Hendrickson v. Hendrickson*, 583 P.2d 1265, 1268 (Wyo. 1978)). The trial court may reasonably conclude that that transition was not complete in the first three years after the divorce, especially since it was entirely anticipatable at the time of the agreement that the wife would be improving her earnings during the seven-year alimony period. As in *Belless*, the husband does not persuade us that the trial court failed to exercise sound judgment or otherwise abused its discretion by providing continuing support to the wife through an award of alimony.

## CONCLUSION

[¶ 24] The district court demonstrated sound judgment in drawing conclusions from objective criteria when it calculated child support, when it refused to change child support retroactively, and when it refused to terminate alimony. Our review of the record indicates that the court could have reasonably reached those conclusions. The ruling is therefore not arbitrary or capricious and is affirmed.

VOIGT, Justice, dissenting, with whom LEHMAN, Justice, joins.

[¶ 25] I agree, for the most part, with the majority's analysis and conclusions. I dissent, however, because there are two aspects of the district court's decision that should not receive this Court's approval. First, I do not believe that the custodial parent's income for child support computation purposes should be reduced by charitable contributions. Charitable contributions, which are voluntary, are not of the same nature as the items that statutorily may reduce "income" to "net income." *See* Wyo. Stat. Ann. § 20–2–303(a)(ii) and (iii) (LexisNexis 2003). Second, there should not be an upward deviation in the non-custodial parent's child support obligation based on the custodial parent's decision to contribute to an adult child's college expenses. Both with charitable contributions and with college expenses, the effect of the court's order is to force the non-custodial parent partially to fund the custodial parent's unilateral financial decisions.

[¶ 26] I would reverse and remand with instructions to the district court to omit these "expenses" when calculating child support.