1998-NMCA-001

952 P.2d 37

**Jacqueline L. MAJOR, Petitioner–Appellee,**

v.

**Randell G. MAJOR, Respondent–Appellant.**

No. 18326.

Court of Appeals of New Mexico.

Dec. 9, 1997.

Mark A. Filosa, Filosa & Filosa, Truth or Consequences, for Petitioner–Appellee.

Candyce L. Ferreri, Dubois, Cooksey & Bischoff, P.A., Albuquerque, for Respondent–Appellant.

## OPINION

BUSTAMANTE, Judge.

1. Randell Major (Father) appeals an order setting the amount of child support to be paid by him to Jacqueline Major (Mother). His primary concern is that the trial court improperly determined his income when it allowed only a portion of the actual cost of replenishing his breeding herd as an ordinary and necessary business expense. We conclude the trial court erred and reverse and remand for a redetermination of child support, as well as attorney fees.

2. Father is a cattle rancher. He operates the business as a sole proprietorship. His main source of income is the sale of calves produced each spring from his breeding herd. He also has some income from the sale of cull cattle, those which do not become impregnated. In the ordinary course of business, during the fall, Father sells off all his cull cattle, as it is not profitable to keep them over the winter. In the spring, he purchases impregnated cattle to replace the cull cattle sold in the fall. He also replaces cattle because of death and disease in the prior year. It is not disputed that these purchases are routine, ordinary, and necessary to maintain the size of Father's breeding herd at approximately 600 head.

3. In 1995, Father purchased 115 head of impregnated cattle for $72,815 to replenish his herd. In 1996, he purchased replacement cattle for $37,438. Mother does not dispute these figures. The issue here is whether these amounts should be deducted in full from his gross income as ordinary and necessary business expenses for purposes of determining child support. Mother requested that the trial court treat both depreciation and the cost of replenishing the breeding herd as non-deductible expenses for child support purposes. Father agreed that depreciation should be added to his net taxable income, but requested that the yearly cost of replenishing the breeding herd be deducted as an ordinary business expense. The trial court accepted that depreciation should be added to Father's taxable income. It also determined that cost of replenishing the herd should be allowed, but limited the amount to $17,500, the maximum allowable deduction under 26 U.S.C.A. § 179 (West.Supp.1997) (hereinafter "Section 179").

## DISCUSSION

4. The award of child support is within the sound discretion of the trial court. *Henderson v. Lekvold*, 99 N.M. 269, 271, 657 P.2d 125, 127 (1983). In order to determine the appropriate amount of child support, the trial court must determine the gross income of the parents. NMSA 1978, § 40–4–11.1 (1995). In making that determination for self-employed parents or the owners of a sole proprietorship, "'gross income' means gross receipts minus ordinary and necessary expenses required to produce such income." *Id.* at (C)(2)(b). However, "ordinary and necessary expenses do not include expenses determined by the court to be inappropriate for purposes of calculating child support." *Id.* The question here is whether the annual cost of replenishing the breeding herd is an ordinary expense required to produce business income under the facts of this case.

5. We have twice had the opportunity, in the context of child support proceedings, to discuss what is meant by ordinary and necessary business expenses for self-employed individuals. In *Roberts v. Wright*, 117 N.M. 294, 296–97, 871 P.2d 390, 392–93 (Ct.App.1994), we affirmed the allowance of a deduction of the reinvested earnings of mother's corporation, which were used to purchase inventory to sustain the one sales contract that made mother's business successful. Likewise, in *Jurado v. Jurado*, 119 N.M. 522, 530, 892 P.2d 969, 977 (Ct.App.1995), we reversed the disallowance of a deduction for that portion of the earnings reinvested in the business which the evidence established were

necessary to sustain it. In *Jurado,* we made it clear that earnings reinvested in the business for the purpose of growth of the business should be treated as income for the purpose of child support. *Id.* The lesson we glean from these cases is that we are more concerned with a parent's actual cash flow than we are with income as represented on tax returns. *See also Padilla v. Montano,* 116 N.M. 398, 406, 862 P.2d 1257, 1265 (Ct. App.1993). We do not rely on technical treatments more appropriate for accounting and tax purposes unless there is evidence that those technical treatments bear some relation to actual cash flow. *See Roberts,* 117 N.M. at 297, 871 P.2d at 393. ("[B]usiness expenses that are valid for accounting or tax purposes may not affect a parent's actual cash flow, so they would normally not be considered ordinary and necessary for purposes of calculating support.") In considering business expenses, a court should make appropriate allowance for expenses that are actually necessary for the parent to sustain his or her business.

■ 6. In this case we are not concerned with undistributed profits; nor are we faced with a request to allow a broad depreciation figure. We are strictly concerned with an annual expense associated with Father's business. The trial court found that the cost of replenishing the herd was a necessary expense. There was sufficient evidence to support this finding. Father testified that the majority of his income came from the sale of calves. Thus, it was important to the maintenance of his business that he have impregnated cattle. If he failed to replace barren or lost cattle, at some point his breeding herd would diminish to the point where there would be essentially no income. As a result, the expense of purchasing impregnated cattle to replace those that he sold or lost was necessary to maintain his business. There is no evidence he expanded the size of his breeding herd. He simply attempted to maintain the herd at 600 head. These purchases were required simply to maintain his business at the same level.

7. Although the trial court determined that the cost was a necessary business expense, it determined that a limit on that expense was required and, therefore, capped the allowance at $17,500 per year, to be increased as the tax code permitted. We believe the trial court abused its discretion in so limiting Father's expense to maintain his breeding herd.

8. The limitation imposed by the trial court comes from Section 179 of the Internal Revenue Code. This section allows a taxpayer to elect to treat the cost of depreciable property purchased for use in the active conduct of a trade or business as an expense in the year the property is placed in service, rather than as property that is capitalized and thereafter subject to depreciation over a number of years. *See* 26 U.S.C.A. Section 179; *see also* 5 Jacob Mertens, Jr., *Mertens Law of Federal Income Taxation* § 23.95, at 158–59 (Lisa Fagan et. al. eds., 1997 Cum. Supp.). It is designed to " 'encourage additional investment in small business since it provides for a faster recovery of capital before the taxing of earnings.' " *Smyers v. Commissioner of Internal Revenue,* 57 T.C. 189, 203, 1971 WL 2598 (1971) (quoting H.R. Rep. 85–2198 (1958)). Additionally, since the property is immediately expensed, there is no need to maintain a depreciation schedule on these assets. Section 179 is of little or no benefit to a business such as Father's, which is showing consistent tax losses.

9. We fail to see any logical relationship between this income tax provision and Father's actual costs of replenishing his herd. None of the policy reasons underlying Section 179 bear any relation to the factors which should be taken into account when determining income for child support purposes. Certainly, it bears no reasonable relationship to Father's actual costs in 1995 and 1996. Thus, it does not provide a useful measure of Father's actual cash flow or the money he has reasonably available to apply toward the support of his children. Nor was any evidence presented below to show what the useful life of cattle or Father's actual depreciation of the cattle was, so that the trial court could determine that either Section 179 expense or some component of depreciation would be the appropriate figure to deduct in its determination of Father's income for child support purposes. Therefore

we believe that selection of the Section 179 limit was an arbitrary limitation not supported by the record. Thus, it was error to limit Father's necessary business expense to the Section 179 cap.

10. Mother argues that this case comes down to an analysis of depreciation. She appears to be arguing that because Father depreciates the cattle over a period of years, he cannot expense them as inventory in one year. That is not what is happening here. Rather, Father is requesting that, when the trial court determines his income for child support purposes, it deduct as a necessary business expense the annual cost of replenishing his breeding herd. Again, how that cost is treated for income tax purposes is not necessarily relevant to determining income for child support. *See Roberts,* 117 N.M. at 297, 871 P.2d at 393.

11. Mother also argues that there should be no deduction for depreciation in determining income for child support purposes. That is not the issue in this case. Father agrees that the depreciation figure used to determine taxable income should be added into the calculation of his income for support services. He simply seeks to deduct the necessary cost of replenishing his herd as a reasonable business expense. Adding the depreciation figure back in also precludes any double counting of the herd maintenance expense. The full depreciation figure may be an estimate of the aggregate cost of maintenance of the entire herd. The replacement expense may amount to the same thing, but on this record, we cannot tell.

12. In response to Father's motion for rehearing, the trial court explained that the limitation was needed to establish predictability in the future. We agree that in a general sense, predictability is a worthy goal when dealing with child support issues. But, predictability should not be achieved by imposing measures unconnected with the parties' real-life circumstances. The actuality of Father's business is that there is no predictability. The need to replenish the herd var-

ies from year to year. Thus, the expenses of the business vary from year to year, as does the income from sales. The amount deductible as business expenses should be limited, if at all, by a method of calculation with some reasonable relationship to the actual cash flow of the business, thus more closely correlating with the parent's actual disposable income and ability to pay. *See Stewart v. Stewart,* 243 Mont. 180, 793 P.2d 813, 814 (1990); Section 40–4–11.1(B) (purposes of child support guidelines). Without limiting the trial court's discretion, an average cost of replenishing the herd over the last five or so years suggests itself as a possible approach. Or, a determination of actual costs each year would also be appropriate. We leave the details of the determination to the trial court on remand, providing that Father is not expanding the herd or otherwise growing his business with these costs.

*CONCLUSION*

13. The trial court erred in limiting the deductible business expense to that allowed under Section 179. The trial court must recalculate Father's gross income. In light of our reversal and remand for redetermination of child support, we also reverse the award of attorney fees. Since the award of attorney fees was based on the trial court's determination of the disparity between the parties' incomes and we have ordered a recalculation of Father's income, the award of attorney fees should be reconsidered. If the trial court awards attorney fees on remand, it should consider in its award the services performed on appeal. The parties shall otherwise bear their own costs on appeal.

14. **IT IS SO ORDERED.**

DONNELLY and PICKARD, JJ., concur.