(203 P.3d 59)

No. 100,207

IN THE MATTER OF THE MARRIAGE OF SHANNON M. WIESE,
*Appellee,* and WILLIAM E. WIESE, *Appellant.*

Opinion filed March 20, 2009.

*Tish Morrical,* of Hampton & Royce, L.C., of Salina, for appellant.

*Jerry L. Harrison,* of Harrison Law Office, L.L.C., of Beloit, for appellee.

Before RULON, C.J., GREENE and HILL, JJ.

HILL, J.: This appeal concerns an increase in child support. A section of our federal tax code, 26 U.S.C. § 179 (2006), allows sole proprietors to use accelerated depreciation and recover the entire cost of a capital asset in 1 year by subtracting that cost from gross income. Here, William E. Wiese, a farmer and sole proprietor, has used 26 U.S.C. § 179 depreciation to his advantage for several years when deciding his federal tax liability. But when his former wife sought an increase in child support, the district court used straight-

line depreciation to fix Wiese's income instead of accelerated depreciation. Wiese contends the court must use the accelerated depreciation figure to reduce his income for purposes of setting child support because these assets materially affect his cash flow. This is a case of first impression in Kansas. Because our child support guidelines caution that a court may include depreciation as a business expense only if it is reasonably necessary to produce income, we hold the district court did not abuse its discretion by using straight-line depreciation instead of accelerated depreciation to calculate child support income. Therefore, we affirm.

*The facts and figures are not disputed by the parties.*

Shannon M. Wiese and William E. Wiese divorced on January 4, 2005. In their divorce agreement, William agreed to pay Shannon $511 per month in child support for their two children beginning February 1, 2005. But in March 2007, Shannon moved to modify child support, alleging that William's income had increased since 2003.

*William's gross income and § 179 property are displayed on his 2004, 2005, and 2006 tax returns.*

William's 2004 income tax return showed the following:
- Gross income of $181,950;
- Total depreciation (regular depreciation and § 179 expense deduction) of $54,839;
  - Regular depreciation of $11,880;
  - Accelerated depreciation (*i.e.*, § 179 deductions) of $42,959;
- Section 179 property consisted of: One Red Angus bull; 66 cows; a storage trailer; a four wheeler; concrete feed bunks; and a ⅓ interest in a combine.

William's 2005 income tax return showed the following:
- Gross income of $340,500;
- Total depreciation (regular depreciation and § 179 expense deduction) of $133,789;
  - Regular depreciation of $28,876;
  - Accelerated depreciation (*i.e.*, § 179 deductions) of $104,913;

- Section 179 property consisted of: 11 cows; a tub grinder; a sprayer; a grain trailer; a silage bed and hoist; a semi-tractor trailer car transport; and a ½ interest in a 6-row cutter head.

William's 2006 income tax return showed the following:

- Gross income of $399,087;
- Total depreciation (regular depreciation and § 179 expense deduction) of $88,689;
  - Regular depreciation of $41,889;
  - Accelerated depreciation (*i.e.*, § 179 deductions) of $46,800;
- Section 179 property consisted of: 47 cows; a bale bed; a truck bumper; and a cattle panel trailer.

Initially this matter was heard by a magistrate but was appealed by both sides to District Judge Cudney.

At a September 2007 hearing on the matter, Quentin Smith, William Wiese's accountant, testified. He explained the difference between regular depreciation and § 179 deductions. For regular depreciation, Smith stated that capital assets are required to depreciate over the life of that asset. Smith indicated that "for a tractor, it's seven years" and "for livestock, breeding cattle in this case, it's five years." Smith asserted that the "code section sets that percentage that you can take every year [for depreciation]."

Unlike regular depreciation, Smith testified that § 179 allows sole proprietors to recover the entire amount of their expenses in 1 year. Smith stated that § 179 will allow a person to "expense it down to zero" so long as that person is making a profit. He gave the following example:

"If you sell that wheat and you have a significant amount of money and you go to buy a tractor, you know, sell 50,000 in wheat and buy a [$50,000] tractor, if you didn't have 179, you could only . . . write off $5,000.00 of that.

"The Code said, and lets you, if you have that protection and you want to sell it, you can go buy that tractor and it doesn't create no — no tax liability. That's, you know, that's the way it works."

But once a § 179 property is sold, Smith testified that any gain is counted towards income and that person must pay self-employment tax on the full amount of the sale.

Outside of these tax purposes, Smith admitted there was no real distinction between the items claimed under § 179 and the items claimed in regular depreciation.

"Q. [William's attorney:] . . . . Were there additional items purchased in 2005 which were not used as a 179 expense?

"A. [Smith:]. Yes, in addition to that five-year property, there was an additional $108,732.00 of — and those are primary cattle that would have been purchased that were placed on regular depreciation. Okay.

"Q. Okay. And is there some reason some cattle would be placed under 179 and some would be depreciated out?

"A. No, not necessarily. We have the ability to — to pick and choose from within that, and so sometimes we use cattle, sometimes we use a truck, or — there really isn't — no, there wouldn't be any significance in that."

Smith also asserted that an item is not required to be purchased through cash rather than financing to qualify as a § 179 property:

"Q. [Shannon's attorney:]. So going back to this 179 expense, it doesn't make any difference whether you borrow the money from the bank, whether you — to buy the assets, or whether you buy the assets from cash that you've generated from your operation, it's a deductible expense to the extent of the limitations imposed by the government, is that correct?

"A. [Smith:]. But provided that you had to show a profit on.

"Q. I understand that.

"A. Yeah."

At the hearing, William also testified. He admitted that in 2005 he tried to expand his herd by purchasing more cows but that he currently tries to maintain a herd of 175 cows. In regards to the specific items he claimed under § 179 , William stated that (1) the 2004 claimed expenses were related to his farming operation; (2) the 2005 claimed expenses were related to his farming operation, including a semi-tractor trailer, but it was also used for hauling cars and eventually leased to another company for that purpose; and (3) the 2006 claimed expenses were all related to his farming operation.

Based on this evidence, the court made the following factual findings. First, the judge found that William generally replaced 11 cows a year; that he expanded his cow herd in 2005; that he has pasture for approximately 150 to 200 cows; and that his cow herd ranged from 150 to 200 cows. Second, the judge acknowledged

that between 2004 to 2006, William supplemented his income with other employment. In 2004, William supplemented his income with his custom-hire work by harvesting silage and corn for other farmers. Then in 2005, William used his semi-tractor trailer to haul cattle, grain, and cars, earning an additional $82,000. Third, in 2006, William leased the semi-tractor trailer, netting a profit of $59,194.

From her findings, the judge rejected Shannon's first argument and determined that all of William's § 179 deductions were reasonably necessary for the production of William's income. Then, the judge rejected William's argument that all of the § 179 deductions be made from his income.

The court revised the amount of William's § 179 deductions by using straight-line depreciation, adding those amounts to his total depreciation, and then in following the custom of its judicial district and the agreement of the parties by adding half of the total depreciation back into William's income. The court calculated William's income as follows:

- William's 2004 figures
  - Revised accelerated depreciation (§ 179 ): $8,301
    - 66 cows at $36,300/5 years
    - ⅓ interest in combine at $1,250/7 years
    - Storage trailer at $650/7 years
    - Four-wheeler at $1,950/7 years
    - Concrete bunks at $1,249/7 years
    - Red Angus bull at $1,550/5 years
  - Corrected income for child support purposes: $45,384

- William's 2005 figures
  - Revised accelerated depreciation (§ 179 ): $15,439
    - 11 cows at $7,889/5 years
    - Farm equipment at $97,024/7 years
  - Corrected income for child support purposes: $128,470

- William's 2006 figures
  - Revised accelerated depreciation (§ 179 ): $8,815
    - 10 head of cows at $4,500/5 years
    - 10 head of cows at $8,855/5 years

- 17 head of cows at $15,051/5 years
- 10 head of cows at $8,855/5 years
- Bale bed at $7,894/7 years
- Truck bumper at $770/7 years
- Cattle panel trailer at $875/7 years
- Corrected income for child support purposes: $77,098

From these calculations, the court found William's average annual income to be $83,651. Using that figure, the court increased William's monthly child support to $1,383, effective April 1, 2007, through December 31, 2007, and $1,461, beginning on January 1, 2008.

*We examine depreciation and review the three approaches other states have taken when considering the relationship between depreciation and child support income.*

For our purposes of setting fair child support, depreciation can be viewed as an accounting technique that determines an annual amount of money to deduct from gross income that can be used to accumulate replacement costs of an asset before it needs to be replaced. The figure represents a decline in an asset's value because of use, wear, or obsolescence. Straight-line depreciation writes off the cost of an asset at a fixed percentage rate every year of an asset's useful life. An accelerated depreciation method employs a greater percentage deduction in the earlier years of an asset's useful life and smaller deductions in the latter years.

Courts across America use three different approaches in considering depreciation expenses while deciding child support. The first group of states rule that depreciation expenses should not be deductible because it is a book figure that does not involve any cash outlay or reduce actual dollar income. A second group views depreciation expenses as deductible because they reflect a diminishment of a party's income-producing capacity and provide a way to replace the depreciated asset. The third group, including Kansas, holds that depreciation should not categorically be deducted as an expense or treated as income; rather, its inclusion, if any, should depend on the particular circumstances of each case. See *Stoner v. Stoner*, 163 Conn. 345, 351, 307 A.2d 146 (1972); *Gammel v.*

*Gammel*, 259 Neb. 738, 743, 612 N.W.2d 207 (2000); Annot., 28 A.L.R.5th 46, 58 §2[a].

*Our standard of review considers the discretion of the trial court.*

Even though this issue is one of first impression, the standard of review of a district court's order determining the amount of child support is whether the district court abused its discretion, while interpretation and application of the Kansas Child Support Guidelines are subject to unlimited review. *In re Marriage of Branch*, 37 Kan. App. 2d 334, 336, 152 P.3d 1265, *rev. denied* 284 Kan. 945 (2007). The question of whether depreciation is reasonably necessary for production of income under the child support guidelines falls solely within the discretion of the trial judge. *In re Marriage of Lewallen*, 21 Kan. App. 2d 73, 74-75, 895 P.2d 1265 (1995).

*Because Kansas sometimes allows depreciation as a reasonable business expense that can be deducted from a parent's income, we hold the method used to calculate that depreciation rests within the trial court's discretion.*

Both parties equate William's request for a full deduction of his § 179 expenses as a motion for the court to use the accelerated depreciation method. So do we.

Section II. E. of our Kansas Child Support Guidelines (2008 Kan. Ct. R. Annot. 113) allows a self-employed person to deduct depreciation from his or her income as a reasonable business expense if it is shown that the depreciation is reasonably necessary for production of income. Section II. E., in its entirety, reads:

"1. Self-Employment Gross Income

"Self-Employment Gross Income is income from self-employment and all other income including that which is regularly and periodically received from any source excluding public assistance and child support received for other children in the residency of either parent.

"2. Reasonable Business Expenses

"In cases of self-employed persons, Reasonable Business Expenses are those actual expenditures reasonably necessary for the production of income. *Depreciation shall be included only if it is shown that it is reasonably necessary for production of income.* Reasonable Business Expenses shall include the additional self-employment tax paid over and above the FICA rate.

"3. Domestic Gross Income—Self-Employed

"*Domestic Gross Income for self-employed persons is self-employment gross income less Reasonable Business Expenses.*" (Emphasis added.) Guidelines § II. E. (2008 Kan. Ct. R. Annot. 113-14.)

Additionally, "the guidelines leave room for judicial discretion in determining whether depreciation should be deducted as a reasonable business expense." *In re Marriage of Cox*, 36 Kan. App. 2d 550, 554, 143 P.3d 677 (2006). However, because this issue is one of first impression, when depreciation is found reasonably necessary for the production of income, our courts have not yet determined which method should be used for treating that depreciation.

Based on our Guidelines and existing case law, we think Kansas essentially follows the third approach in viewing depreciation expenses for child support purposes. The use of depreciation, if any, should depend on the particular circumstances of each case. The district judge applied this approach in her analysis. Thus, in the absence of a provision in the Guidelines identifying treatment of § 179 deductions, we hold that the method in which a trial court chooses to calculate depreciation lies within its discretion. See *Baker v. Baker*, 183 Ariz. 70, 72, 900 P.2d 764 (1995) ("We note that some jurisdictions apply a hybrid of this flexible method, providing by guidelines, procedural rules, or case law that the accelerated portion of depreciation presumptively cannot be deducted, but the straight line portion can, so long as the trial court in its discretion does not otherwise find it inappropriate."); *Stoner*, 163 Conn. at 352-53 ("In formulating a workable and flexible approach between the two extremes we hold that the amount of depreciation, if any, to be considered in determining the availability of net income for the purposes of alimony and support awards is best left to the court's discretion, 'determined from all the circumstances including the amount of depreciation claimed and the property depreciated.' ").

*We review how four other states have decided § 179 depreciation.*

We have found four published cases. See *Gripshover v. Gripshover*, 246 S.W.3d 460 (Ky. 2008); *Gammel*, 259 Neb. 738; *Major*

*v. Major*, 124 N.M. 436, 952 P.2d 37 (Ct. App. 1997); and *Watson v. Watson*, 60 P.3d 124 (Wyo. 2002).

The Kentucky Supreme Court in *Gripshover* has issued the most recent opinion on the subject. It is distinguishable from our case because the Kentucky Child Support Guidelines expressly specify that straight-line depreciation is the only allowable method to calculate depreciation. In *Gripshover*, the court noted that the plain language of its child support guidelines statute states that " '[s]traight-line depreciation, using Internal Revenue Service (IRS) guidelines, shall be the only allowable method of calculating depreciation expense in determining gross income.' " 246 S.W.3d at 468 (quoting Ky. Rev. Stat. Ann. § 403.212[2][c] [Michie 1999; 2008 Supp.]). Abiding by this statutory language, the court in *Gripshover* held that the trial court erred in ruling that the § 179 deductions were appropriate adjustments to father's gross income. The court in *Gripshover* reasoned that although § 179 appears to provide an alternative to the standard straight-line depreciation, its child support guidelines statute expressly excluded such alternatives. 246 S.W.3d at 468.

Here, the district court primarily followed the reasoning of the Nebraska Supreme Court in *Gammel*. But, *Gammel* is fundamentally distinguishable from this case. Paragraph D of the Nebraska Child Support Guidelines states that " 'if a party is self-employed, depreciation claimed on tax returns should be added back to income or loss from the business or farm to arrive at an annualized total monthly income.' " 259 Neb. at 740. From this language, the court in *Gammel* stated that Nebraska follows the first approach in viewing depreciation expenses for child support purposes. 259 Neb. at 743.

In *Gammel*, under its child support guidelines, the district court determined that § 179 deductions should be added back to a self-employed trucker's earned income as depreciation. The father in *Gammel* appealed, arguing that "a Section 179 deduction reflects an actual cash expenditure, thus reducing the self-employed parent's available resources from which to pay child support." Rejecting the father's argument, the *Gammel* court held that a deduction under § 179 is "depreciation" under its child support guidelines.

259 Neb. at 744. Reasoning that § 179 deductions served the same tax purpose as depreciation, the court held:

"A deduction pursuant to Section 179, sometimes referred to as a 'depreciation deduction,' although technically not 'depreciation' under the Internal Revenue Code, serves the same tax purpose as depreciation. Both allow a taxpayer to recover the cost of depreciable property, or, in other words, to take a deduction in calculating taxable income to reflect the cost of using such property. Because a deduction elected under Section 179 has the same effect as depreciation it should be treated as depreciation under paragraph D of the Nebraska Child Support Guidelines." 259 Neb. at 744.

In his argument, William relies on the New Mexico Court of Appeals ruling in *Major* to support his position. A review of *Major* discloses that the New Mexico Child Support Guidelines regarding this subject appear similar to the Kansas Child Support Guidelines. Under the New Mexico Child Support Guidelines, a self-employed parent's gross income means " 'gross receipts minus ordinary and necessary expenses required to produce such income.' " 124 N.M. at 437 (quoting N.M. Stat. Ann. 1978, § 40-4-11.1[C][2][b] [Michie 1995]). Furthermore, it appears that New Mexico also abides by the third approach because the court in *Major* examined the factual circumstances surrounding the claimed depreciation. 124 N.M. at 437-39. But this case is not directly on point. Claims concerning § 179 arose as a secondary issue when the trial court imposed a monetary limit found in § 179 to cap the amount father could deduct in necessary expenses.

In *Major*, the father agreed that his depreciation should be added to his net taxable income but requested that the yearly cost of replenishing his breeding herd be deducted as an ordinary business expense. The main issue before the New Mexico Court of Appeals became "whether the annual cost of replenishing the breeding herd is an ordinary expense required to produce business income." 124 N.M. at 437. Under its facts, the father was a self-employed cattle rancher whose main source of income came from the sale of calves produced each spring from his breeding herd. Also, on an annual basis, he sold his cull cattle during the fall and purchased impregnated cattle in the spring to replace the sold cattle.

In determining this issue, the court in *Major* gleaned from its previous cases that their courts "are more concerned with a parent's actual cash flow than . . . with income as represented on tax returns." 124 N.M. at 438. The court in *Major* noted that in two prior cases, it allowed deductions of earnings that were reinvested in a business after the evidence established these costs were necessary to sustain it. 124 N.M. at 437-38 (discussing *Roberts v. Wright*, 117 N.M. 294, 296-97, 871 P.2d 390 [1994], and *Jurado v. Jurado*, 119 N.M. 522, 530, 892 P.2d 969 [1995]). But, the court in *Major* also made clear that "earnings reinvested in the business for the purpose of growth of the business should be treated as income for the purpose of child support." 124 N.M. at 438. Under the facts in its case, because these purchases were required simply to maintain his business at the same level, the court in *Major* found the father's necessary cost of replenishing his herd deductible. 124 N.M. at 438.

Significantly, the application of § 179 arose as a secondary issue. In this second issue, the trial court imposed a monetary limitation to the amount of expenses the father could claim in replenishing his herd. Regarding this limitation, the court in *Major* held that the trial court's selection of the § 179 limit was arbitrary and unsupported by the record. Therefore, the court in *Major* held that the trial court's limitation of the father's necessary business expenses to the § 179 cap was in error. 124 N.M. at 438-39.

William primarily relies on Wyoming Supreme Court's ruling in *Watson* to support his position. But, like *Gammel*, *Watson* is distinguishable from this case. In determining income in calculating child support under Wyo. Stat. Ann. § 20-2-303(a)(ii), " 'all reasonable unreimbursed legitimate business expenses shall be deducted.' " *Watson*, 60 P.3d at 125-26. Interpreting this statutory language, the court in *Watson* held that the § 179 deduction constituted a "reasonable unreimbursed legitimate business expense" because it impacted father's actual cash flow. 60 P.3d at 128. The court in *Watson* ruled: "[A] Section 179 expense differs from depreciation in that it directly affects business cash flow and a parent's disposable income." 60 P.3d at 128. Therefore, in viewing depreciation in the context of child support, *Watson*'s focus on a deduc-

tion's impact to an obligor's cash flow appears to follow the second approach. We do not follow this approach in Kansas.

In *Watson*, the issue before the court was "whether a section 179 expense deduction claimed by the ranch corporation for the benefit of father can be used to lower father's monthly net income." 60 P.3d at 126. Like William, the father argued that his § 179 deduction should not be added back into his income as "depreciation" because "a Section 179 deduction reflects an actual cash expenditure, reducing available resources from which to pay child support." 60 P.3d at 127. The *Watson* court agreed and reversed the district court. 60 P.3d at 128-29. The court in *Watson* reiterated that "the focus should be upon the reasonable and legitimate nature of the expense and its impact on the party's actual cash flow in the year in question rather than the treatment of the expense by federal law in the context of income taxes. [Citations omitted.]" 60 P.3d at 128. Applying this test, the court in *Watson* concluded that since the § 179 property is actually paid for in the same year in which the deduction is allowed, it affected the father's cash flow in that year. Thus, the court in *Watson* held that "reasonable unreimbursed legitimate business expenses" included expenses claimed under § 179, and therefore, the district court erred in disallowing the § 179 expense claimed by father. 60 P.3d at 128-29.

*We look at prior Kansas cases dealing with similar concepts.*

Not cited by either party, we note that this court dealt with a similar issue in *In re Marriage of Kells*, No. 65,115, unpublished opinion filed January 25, 1991. In *Kells*, the trial court added back a portion of the father's depreciation shown on his tax return in calculating his income for child support. On appeal, the father argued that the trial court erred, asserting that his income for child support purposes should have been reduced by the full amount of the depreciation expenses he claimed on farm equipment. In reviewing this argument, it is significant to note that this court was unable to fully examine the merits of the father's claim because he failed to furnish a sufficient record. Slip op. at 2, 4. Nevertheless,

in applying an abuse of discretion standard, this court rejected father's claim, stating:

"The child support guidelines in effect at the time of the decision provided that ordinary and necessary business expenses which reduce available funds be deducted from gross income of self-employed persons. The guidelines further rest discretion with the court in situations where income is received on a sporadic basis, such as farming. (1989 Kan. Ct. R. Annot. 59.) Since Donald has not designated a sufficient record to establish an abuse of discretion, his argument must fail." Slip op. at 4.

A year later, the court in *In re Marriage of Lewallen*, 21 Kan. App. 2d 73, mentioned the term "accelerated depreciation" when examining the holding in *Freking v. Freking*, 479 N.W.2d 736 (Minn. App. 1992). In *Lewallen*, the court addressed the topic of depreciation for the first time in Kansas. This court followed the ruling in *Freking*, *Lewallen*, 21 Kan. App. 2d at 75, stating:

"The topic of depreciation in the area of child support payments has not been addressed by the Kansas courts. Minnesota has addressed it in *Freking v. Freking*, 479 N.W.2d 736 (Minn. App. 1992). In *Freking, the Minnesota Court of Appeals held the trial court properly disallowed an accelerated depreciation deduction when determining a father's income for child support purposes.* The court went on to hold that when substantial depreciation deductions are taken on a farming operation, tax returns alone may be insufficient data to determine income. However, a total disregard of depreciation is reversible error. 479 N.W.2d at 740." (Emphasis added.)

Although this court ultimately found that the district court abused its discretion by completely disregarding the father's depreciation in his farming operations, its adoption of *Freking* suggests a closer examination of that case is warranted. See *In re Marriage of Lewallen*, 21 Kan. App. 2d at 75.

In *Freking*, the father testified that he inherited, in part, a 50-percent interest in his father's farm machinery. But, he admitted that the accelerated depreciation taken on the farm equipment for income tax purposes was about twice the actual depreciation. Using this testimony, the district court did not totally disregard his depreciation but disallowed the accelerated portion of the depreciation deduction in calculating his net income for child support purposes. The Minnesota Court of Appeals upheld this portion of the district court's decision, finding that the district court's reliance on

the father's testimony that the actual depreciation was about half of the accelerated depreciation did not constitute an abuse of discretion. 479 N.W.2d at 740-41.

Since then, our courts have limited consideration in this area to whether the district court abused its discretion in allowing or disallowing depreciation to be deducted from a self-employed person's gross income. See, *e.g.*, *In re Marriage of Cox*, 36 Kan. App. 2d at 554.

Before us is the narrow question of whether the district court abused its discretion in calculating William's § 179 deductions as straight-line depreciation. We follow the reasoning in *Kells* and *Freking* to answer this question. Unless William proves that the court abused its discretion in calculating his expenses using straight-line depreciation instead of accelerated depreciation, we will not modify the court's holding. Stated in another way, it is within the district court's discretion to deduct § 179 property as straight-line depreciation (*i.e.*, an amount divided over the life of the asset). Reversible error will be found only where it is shown that the trial court abused its discretion. " 'An abuse of discretion is shown only where no reasonable person would take the view adopted by the court.' [Citations omitted.]" *In re Marriage of Cox*, 36 Kan. App. 2d at 554.

In this case, Smith testified that they selected items within the depreciation expenses to elect under § 179 , and outside that tax benefit, there was no significant difference between these two categories. Furthermore, contrary to William's argument on appeal, § 179 does not distinguish its purchases of "section 179 property" in terms of cash or financing. Moreover, Smith provided corroborating testimony on this subject, stating that he did not distinguish the manner in which the § 179 property was purchased. Lastly, William's reliance on his cash-based argument from *Watson* is unpersuasive. As stated above, *Watson* does not follow Kansas' approach in viewing depreciation for child support purposes.

The Kansas Child Support Guidelines direct all district courts to determine from the facts of each case whether depreciation is reasonably necessary for the production of income. Our ruling preserves the discretion afforded the district courts in making this type

of decision. Consequently, under these circumstances, we find the district court did not abuse its discretion in declining to deduct the full value of William's § 179 property from his gross income.

Because this is a genuine issue raised by the appellant, we decline to grant attorney fees to the appellee for the appeal.

Affirmed.