NOT DESIGNATED FOR PUBLICATION

No. 114,609

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

CARRIE E. SINKS,
*Appellant*,

and

LAWRENCE W. SINKS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Douglas District Court; BARBARA KAY HUFF, judge. Opinion filed July 22, 2016. Affirmed in part, reversed in part, vacated in part, and remanded with directions.

*Shaye L. Downing*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., of Lawrence, for appellant.

*Robert E. Keeshan*, of Scott, Quinlan, Willard, Barnes & Keeshan, LLC, of Topeka, for appellee.

Before ARNOLD-BURGER, P.J., SCHROEDER, J., and JEFFREY E. GOERING, District Judge, assigned.

*Per Curiam*: When the district court entered a final decree of divorce for Lawrence W. Sinks (Larry) and Carrie E. Sinks (Carrie), both parties appealed to this court. There, this court determined that the district court improperly allowed an expert rebuttal witness to testify about Larry's income and business holdings, leading to a reversal. On remand, the district court was directed to recalculate Larry's income and to clarify some of its orders concerning maintenance. Specifically, this court asked the

1

district court to explain the relationship between the $55,000 Carrie spent on her own support during the pendency of the divorce and the length of the maintenance award.

As instructed the district court recalculated Larry's income. However, when considering the relationship between Carrie's expenditures and the length of the maintenance award, the district court decided to reexamine the $100,000 it had previously considered marital debt to pay for marital and child expenses. After finding that some of the $100,000 actually constituted Carrie's individual support, the district court granted Larry a credit. A short while later, Larry moved the court to prevent Carrie from relocating to Texas with their daughter. While the district court denied Larry's motion, it *sua sponte* granted him travel expenses to visit the child.

Carrie now appeals, arguing that the district court exceeded the mandate by reexamining the $100,000 figure. She also argues that the district court recalculated Larry's income incorrectly and improperly granted him travel expenses to visit their daughter. Finally, after oral argument in this case, Larry filed a motion for attorney fees.

Because we find the district court exceeded this court's mandate, we reverse the district court's decision to reconsider the previously approved $100,000 for marital debt and set aside the additional $18,831.44 credit that was given to Larry. This court affirms the district court's calculation of Larry's income for child support purposes. We remand for the district court to reconsider its decision to exclude expenses from Larry's income for spousal maintenance purposes which it had included for child support purposes. Furthermore, we vacate the district court's *sua sponte* order granting Larry travel expenses as a credit against child support for potential visits to Texas. And finally, we deny Larry's request for attorney fees.

2

Summarized from an earlier appeal in this case, the facts are as follows: Carrie and Larry married in 1995 and had two children. After 15 years of marriage, Carrie filed for divorce. Instead of entering formal orders for temporary support, the district court permitted an informal agreement between the parties in which Carrie would use the couple's shared assets to cover the cost of joint debts and child expenses while the action was pending with plans to "balance the ledger" and backdate support when the divorce was finalized. *In re Marriage of Sinks*, No. 110,316, 2014 WL 4627495, at *1 (Kan. App. 2014) (unpublished opinion) (*Sinks I*). Among other things, the final order from the district court provided:

- Carrie spent $100,000 of the couple's liquid marital assets on marital debts.
- Additionally, Carrie spent $55,000 on support for herself during the pendency of the divorce, while Larry spent $45,000 on his living expenses.
- Based on testimony at trial, Larry's income for child support and maintenance purposes was $134,195.
- Maintenance would last for 62 months *from the date of divorce*.

Carrie and Larry each appealed aspects of the ruling, and this court reversed for the district court to reconsider a number of issues. Most importantly, this court determined that the district court improperly allowed a rebuttal expert witness to testify. Therefore, this court required the district court to calculate Larry's income without consideration of that testimony. 2014 WL 4627495, at *4. In light of this ruling, the court also ordered recalculation of maintenance and child support, an explanation by the district court as to why it declined to follow the Douglas County Family Law Guidelines, and an explanation as to how the district court treated the relationship between the length

3

of the maintenance award and the $55,000 Carrie spent on support. 2014 WL 4627495, at *5-7.

On remand, Larry argued that his yearly income was $37,583. This recalculation depended in part on crediting him for certain business travel expenses and depreciation that the first decision treated as income. In terms of maintenance, he argued that the district court needed to recalculate the $100,000 it originally determined to be marital debt, as he argued that some of the costs included in that figure duplicated costs from the $55,000 Carrie spent on living expenses.

Carrie, on the other hand, contended that the district court could not reexamine the $100,000 figure as the parties agreed to treat it as marital debt, the information Larry relied on to argue that some of the expenses were duplicative was available to him at the time of the original trial, and the amount had never been appealed. Instead, Carrie alleged that the only real issue on remand concerned Larry's income, which she calculated should include travel expenses for purely personal trips and the full amount of depreciation from his businesses. She also conceded that Larry was owed a $5,000 credit to equalize the cost of their individual support during the pendency of the divorce, and both parties agreed that child support and maintenance needed to be backdated to the date of filing not the date of the divorce.

In its ruling, the district court accepted Larry's calculation of his income as a base number but added to that $7,318 for a write-off for a mobile office he no longer owned and $7,500 for the depreciation of his business. These additions brought his yearly income up to $52,401. This new income became the basis for the recalculated child support award; but finding that depreciation and in-kind income is not required to be included in the calculation of maintenance, the district court used the base income (namely, $37,583) to calculate that award. And as agreed by the parties, the district court also backdated both maintenance and child support to the date of filing.

4

In light of the backdated maintenance and child support awards, the district court reexamined both the $100,000 it originally termed marital debt and the $55,000 spent by Carrie for her living expenses. Because the district court concluded that a little over $37,660 of the $100,000 duplicated Carrie's other expenses, it credited Larry back half that amount or $18,831.44.

Carrie appealed the district court's ruling. Before she docketed the appeal, however, Larry filed a motion to enforce parenting time and prevent her from moving the couple's remaining minor child out of state. At a hearing, the parties proffered that Larry had no set parenting time with their daughter as he first needed to complete certain steps before filing a motion to modify parenting time. That said, the parties also recognized that their daughter did spend time with Larry by choice. The district court ultimately allowed the move but ordered that Larry receive a credit on his child support for travel expenses if he visited his daughter in Texas. Carrie timely filed a notice of appeal from this ruling. This court granted her motion to docket out of time, and the docketing statement, filed a short time later, included issues from both the district court's order on remand and the order concerning the out-of-state move.

Finally, within 14 days of oral argument, as required by Supreme Court Rule 7.07(b)(2) (2015 Kan. Ct. R. Annot. 72), Larry filed a motion for appellate attorney fees.

ANALYSIS

*Carrie did not abandon her appeal when she filed her docketing statement out of time.*

Before reaching the merits of Carrie's appeal, Larry argues that Carrie abandoned all issues related to the district court's June 11, 2015, order related to this court's remand by failing to docket her appeal within 21 days.

After filing a notice of appeal with the district court, an appellant has 21 days to file his or her docketing statement with the Clerk of the Appellate Courts. Supreme Court Rule 2.041(a) (2015 Kan. Ct. R. Annot. 17). But importantly, this "obligation to timely docket an appeal arises from an appellate rule of this court rather than a statutory mandate." *Fowler v. State*, 37 Kan. App. 2d 477, 480, 154 P.3d 550 (2007). Accordingly, "most of the subsequent steps in prosecuting an appeal . . . are enforceable as this court deems appropriate in its discretion." 37 Kan. App. 2d at 481; see K.S.A. 2015 Supp. 60-2103(a) (providing that an appellant's failure to prosecute an appeal may result in the appellate court providing whatever remedy it "deems appropriate").

Here, Carrie filed her initial notice of appeal on July 2, 2015, but failed to timely file a docketing statement. In fact, Carrie's first filing with the appellate court was a motion to docket out of time, which she later amended. Despite Larry opposing the motion, this court granted leave for Carrie to file her docketing statement on October 26, 2015. Clearly, more than 21 days passed between the initial notice of appeal and the docketing statement, which leads to Larry's insistence that Carrie waived any arguments stemming from the order she appealed July 2.

But as Larry acknowledges in his brief, our Kansas appellate courts are not required to dismiss an appeal for failure to comply with this 21-day requirement. See *Vorhees v. Baltazar*, 283 Kan. 389, 393, 153 P.3d 1227 (2007) (holding that decision to dismiss under Supreme Court Rule 5.05 [2015 Kan. Ct. R. Annot. 37] is discretionary). And while Larry urges this court to adopt a good cause requirement when considering whether to grant a motion to docket out of time, he provides no real justification for such a rule. In fact, Larry relies primarily on cases concerning insufficient notices of appeal, not those with late docketing statements. See *Gates v. Goodyear*, 37 Kan. App. 2d 623, Syl. ¶ 4, 155 P.3d 1196, *rev. denied* 284 Kan. 945 (2007); *Fiorella v. Fiorella*, No. 102,067, 2010 WL 1687864, at *3 (Kan. App. 2010) (unpublished opinion); *In re*

6

*Marriage of Crabtree*, No. 90,590, 2004 WL 1715002, at *3 (Kan. App. 2004) (unpublished opinion).

Given that the decision to grant a motion to docket out of time is discretionary and Larry's only real objection to Carrie's motion is that he believed that Carrie had abandoned that appeal, it cannot fairly be said this court abused its discretion. All the appellate issues raised by Carrie are therefore properly before this court, and we will proceed to examine the merits of Carrie's claims.

*The district court exceeded the mandate by reexamining the $100,000 previously categorized as marital debt.*

Carrie argues that the district court erred by reexamining and recalculating the $100,000 it originally treated as marital debt.

The general question as to whether a district court complied with an appellate court's mandate is a question of law over which this court exercises unlimited review. *Leffel v. City of Mission Hills*, 47 Kan. App. 2d 8, Syl. ¶ 4, 270 P.3d 1 (2011). That said, when the mandate from an appellate court remands the case for further proceedings without directing the trial court's judgment, that court "has discretion to preside over the remaining trial proceedings as if the trial court had originally made the ruling mandated by the appellate court." 47 Kan. App. 2d 8, Syl. ¶ 5. To put it more succinctly, "a trial court may address those issues necessary to the resolution of the case that were left open by the appellate court's mandate." 47 Kan. App. 2d 8, Syl. ¶ 5. But where the appellate court decided an issue "by explicit language or necessary implication," that issue cannot be reconsidered by the district court. 47 Kan. App. 2d 8, Syl. ¶ 6.

A few illustrations from other cases concerning appellate mandates help demonstrate the practical application of these rules. For example, in *In re Marriage of*

7

*Phillips*, No. 93,655, 2006 WL 2264980, at \*5 (Kan. App.) (unpublished opinion), *rev. denied* 282 Kan. 790 (2006) (*Phillips I*), this court determined that the district court needed to expand its findings of fact and conclusions of law concerning the amount and duration of maintenance. On remand, however, the district court changed the effective date for the modification of maintenance despite this court explicitly approving the prior date. *In re Marriage of Phillips*, No. 99,172, 2009 WL 454926, at \*1 (Kan. App. 2009) (unpublished opinion) (*Phillips II*). This court determined that the date change exceeded its mandate. 2009 WL 454926, at \*1.

Somewhat similarly, in *Kansas Baptist Convention v. Mesa Operating Limited. Partnership*, 253 Kan. 717, 740, 864 P.2d 204 (1993) (*Mesa I*), our Kansas Supreme Court remanded the case to the district court to reexamine a contract and make whatever modifications would "preserve the original purpose and expectations of the parties in light of the changed circumstances." But when the district court modified the contract, one of the parties appealed and argued that the district court's reformation failed to satisfy the mandate. See *Kansas Baptist Convention v. Mesa Operating Ltd. Partnership*, 258 Kan. 226, 231, 898 P.2d 1131 (1995) (*Mesa II*). After considering all of the party's contentions as to how the reformation failed to preserve the contract's original purpose and expectations, however, our Supreme Court affirmed the district court's order. 258 Kan. at 247.

In another instance, our Supreme Court remanded a case to the district court for more thorough findings of fact and conclusions of law. *Progressive Products, Inc. v. Swartz*, 292 Kan. 947, 962, 258 P.3d 969 (2011) (*Progressive I*). However, one of the parties appealed the district court's order on remand to this court, arguing that the district court failed to follow the mandate. *Progressive Products, Inc. v. Swartz*, No. 109,978, 2014 WL 4080157, at \*2-3 (Kan. App. 2014) (unpublished opinion), *rev. denied* 302 Kan. ___ (2015) (*Progressive II*). The party based this assertion on the fact that some facts in the record contradicted those the district court relied on when amending its

judgment. But as this court pointed out, the Supreme Court remanded the case "because the trial court's findings were incomplete, *not* because they were wrong." 2014 WL 4080157, at *3. Accordingly, this court determined that the district court complied with the mandate by amending its findings and conclusions. 2014 WL 4080157, at *3.

In many ways, this case resembles the reversals in *Phillips I* and *Progressive I*. When grappling with the issue of the maintenance award, this court instructed the district court "to clearly explain [its] treatment of marital funds used by Carrie for *her own support . . .* and how it relates, if at all, to [its] final determination as to the length of the maintenance award." (Emphasis added.) *Sinks I*, 2014 WL 4627495, at *7. As pointed out earlier in the opinion, the district court had already determined that the $100,000 constituted marital debt—a determination this court tacitly approved as "properly excluded from consideration as maintenance." 2014 WL 4627495, at *7. Nothing in the opinion even implicitly directs the district court to reexamine that amount; instead, like in both *Phillips I* and *Progressive I*, the mandate focused on the need for more thorough findings. See *Sinks I*, 2014 WL 4627495, at *7.

But unlike in *Progressive II*, where the district court properly addressed the need for more thorough fact finding, the district court in this case exceeded the narrow scope of the mandate. For one, the district court never considered the $100,000 part of the funds Carrie used "for her own support," which were the only funds this court asked the district court to reconsider. 2014 WL 4627495, at *7. By again examining the $100,000, the district court reached beyond the narrow focus of this court's instructions. Second, the district court noted in its order that it reexamined the $100,000 amount to address the retroactivity of both the maintenance and child support awards. But this court's only instruction regarding the child support award concerned recalculating Larry's income, not the $100,000. 2014 WL 4627495, at *4. And third, this court instructed the district court merely to explain the relationship between Carrie's expenditures and the length of the maintenance award, not to recalculate anything. 2014 WL 4627495, at *7.

9

In sum, although the district court had discretion in resolving the maintenance issue, reconsideration of the $100,000 figure was not an issue "left open by the appellate court's mandate." *Leffel*, 47 Kan. App. 2d 8, Syl. ¶ 5. Instead, this court implicitly approved of the way the district court handled the $100,000 figure and issued instructions that concerned only the $55,000 Carrie spent for her own support. By reexamining what it had already determined to be marital debt, the district court exceeded this court's mandate. The district court's subsequent credit to Larry in the amount of $18,831.44 must therefore be reversed.

*The district court did not miscalculate Larry's income for maintenance and child support purposes.*

Next, Carrie contends that the district court miscalculated Larry's income on remand. Our Kansas Statutes expressly authorize the district court to award maintenance to either party in a divorce. See K.S.A. 2015 Supp. 23-2902. However, an appellate court generally reviews this award for an abuse of discretion. *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 706, 229 P.3d 1187 (2010). Similarly, child support obligations in a divorce are governed by statute, as well as the Kansas Child Support Guidelines (Guidelines) established by our Kansas Supreme Court. See K.S.A. 2015 Supp. 23-3001 *et seq.* The district court's child support award is reviewed for abuse of discretion, while the interpretation and application of the Guidelines is a question of law subject to unlimited review. *In re Marriage of Thomas*, 49 Kan. App. 2d 952, 954, 318 P.3d 672 (2014). Failure to follow the Guidelines is reversible error. 49 Kan. App. 2d at 955.

Due to the unique financial facts of this case, the district court calculated the child support and maintenance awards on different base incomes. As such, this opinion will first examine the facts underlying the district court's calculations before discussing whether any error occurred.

10

*Evidence of Larry's income*

In reversing and remanding the issue of Larry's income, this court instructed the district court to disregard the testimony of expert witness Steven York. *Sinks I*, 2014 WL 4627495, at *4. Without York's testimony, the evidence concerning Larry's income is limited to the following:

- Larry testified that his income for 2009 was a loss of approximately $142,000. In 2010, and without accounting for the loss from the prior year, his income from his business holdings was $37,583.
- In 2009, Larry claimed approximately $54,000 in business depreciation and $200,000 in equipment depreciation. In 2010, he claimed over $75,000 of business depreciation.
- Larry deducted over $11,000 in travel expenses in 2010. He testified that most of these expenses were for business travel and that he never knowingly claimed personal travel expenses as business ones.
- Accountant Michael Roark testified that Larry's net rental income was approximately $27,000 in 2010. This income came from Larry's business holdings.
- Larry's father testified that he had no income at the time of the divorce hearing.

Based on this testimony, the district court accepted $37,583 as Larry's base income. But after finding that the Guidelines include depreciation and in-kind income as child support income, the district court increased this amount to $52,401. However, the district court elected against using this increased income amount for Carrie's maintenance award, finding specifically that the calculation of maintenance does not require the same inclusivity as child support awards under the Guidelines.

11

*Calculation of child support*

On appeal, Carrie argues that the district court needed to count the full $75,000 of deprecation and all of Larry's travel expenses as income. Our Guidelines allow for self-employed parents to deduct reasonable business expenses from their income. Kansas Child Support Guidelines, § II.E.2. (2015 Kan. Ct. R. Annot. 113). However, "Reasonable Business Expenses are those actual expenditures reasonably necessary for the production of income. Depreciation shall be included only if it is shown that it is reasonably necessary for the production of income." Guidelines, § II.E.2 (2015 Kan. Ct. R. Annot. 113). As such, depreciation is "not categorically . . . deducted as an expense or treated as income" but instead is included as child support income "depend[ing] on the particular circumstances of each case." *In re Marriage of Wiese*, 41 Kan. App. 2d 553, 558, 203 P.3d 59 (2009). Accordingly, "[t]he question of whether depreciation is reasonably necessary for production of income under the child support guidelines falls solely within the discretion of the trial judge." 41 Kan. App. 2d at 559.

Our Kansas cases offer a few firm principles regarding depreciation. For example, a district court's decision to simply disregard depreciation is an abuse of discretion. *In re Marriage of Lewallen*, 21 Kan. App. 2d 73, 75, 895 P.2d 1265 (1995). Additionally, income tax returns do not always provide a reliable indication of an individual's gross income. 21 Kan. App. 2d at 75. When discussing a very specific type of depreciation in *Wiese*, this court noted that where the Guidelines provide no instructions about how to treat a specific type of deprecation, "the method in which a trial court chooses to calculate depreciation lies within its discretion." 41 Kan. App. 2d at 560. And generally, the burden to demonstrate whether depreciation is reasonably necessary for the production of income is on the party claiming depreciation. See *In re Marriage of Cox*, 36 Kan. App. 2d 550, 554, 143 P.3d 677 (2006); *In re Marriage of Sasko*, No. 105,799, 2012 WL 223929, at *6 (Kan. App. 2012) (unpublished opinion). As this court explained in *Sasko*:

"[T]he burden to show that depreciation was reasonably necessary for the production of income should be placed on [the father who was claiming depreciation] because he possessed superior knowledge concerning the depreciation expenses. At the modification hearing, [mother] submitted copies of [father's] tax returns, which contained [father's] depreciation expenses for tax purposes. These depreciation figures, however, did not give [mother] any indication of which, if any, depreciation expenses were reasonably necessary for the production of [father's] income. Only [father] had ready access to that peculiar knowledge of the particular equipment he would need to replace to successfully operate his pizza franchises." 2012 WL 223929, at *6.

As Larry alludes to in his brief, neither party spent a significant time on depreciation at the divorce hearing. There, Larry estimated that the replacement cost of the equipment he depreciated was likely around $40,000, as it was "so old it's not even really fixable." He testified that he used this equipment to generate income. And at a later hearing on a motion to modify child support, an accountant testified that when Larry regained some equipment after his business' buyer defaulted, Larry depreciated the equipment's full value—namely, $200,000. However, the accountant did not believe the equipment was worth that full amount.

On appeal, Carrie points to this limited amount of testimony and claims that Larry, like the father in *Sasko*, failed to carry his burden and prove that the depreciation was reasonably necessary for the production of income. But importantly, Carrie never really raised this issue while cross-examining either Larry or the accountant. In fact, nothing in the record appears to undercut Larry's assertion that he used the equipment that originated the depreciation to generate income. In other words, although Larry presented only a small amount of evidence to meet his burden, that evidence essentially went uncontroverted, allowing the district court to consider it conclusive on the issue of depreciation. See *D.M. Ward Const. Co., Inc. v. Electric Corp. of Kansas City*, 15 Kan. App. 2d 114, Syl. ¶ 6, 803 P.2d 593 (1990) ("It is a general rule of law that uncontroverted evidence which is not improbable or unreasonable cannot be disregarded

13

by the trial court . . . and such uncontroverted evidence should ordinarily be regarded as conclusive."), *rev. denied* 248 Kan. 994 (1991).

Exercising its discretion, the district court relied on the age of the equipment to decide that most of the depreciation constituted a reasonable business expense rather than income. This court has repeatedly upheld decisions in which the district court's calculation resulted in only some of the depreciation being deducted from income. *In re Marriage of Wiese*, 41 Kan. App. 2d at 566-67; *In re Marriage of Cox*, 36 Kan. App. 2d at 554; *In re Marriage of Sims*, No. 108,437, 2013 WL 5422326, at *10 (Kan. App. 2013) (unpublished opinion), *rev. denied* 299 Kan. 1269 (2014); *In re Marriage of Jones*, No. 97,714, 2008 WL 2251177, at *10 (Kan. App. 2008) (unpublished opinion) (reversing district court's decision on other grounds but upholding depreciation calculation). Like in those cases, the district court balanced the evidence presented at the hearing in reaching its final conclusion. And given that the method by which a district court calculates depreciation lies within its discretion, it cannot be said that the decision in this case is unreasonable. See *In re Marriage of Wiese*, 41 Kan. App. 2d at 560. Accordingly, the district court's decision to add only $7,500 of depreciation back into Larry's income is affirmed.

*Calculation of maintenance*

Carrie also argues that the district court incorrectly recalculated Larry's income for maintenance purposes. Specifically, she contends that the Douglas County Family Law Guidelines (DCFLG) require the district court use the same definition of gross income as in the Guidelines—a definition that includes depreciation and other income.

In calculating the maintenance award, the district court relied on the portion of the DCFLG providing that "[t]he maintenance guideline is 17% of the difference between the parties' respective gross income or earning capacities. The definition of gross income *is*

14

*as defined by the Kansas Child Support Guidelines*." (Emphasis added.) Douglas County Family Law Guidelines § 3.01 (October 2012). But because guidelines such as these have not been officially adopted by any court, this court has held that judges are not required to justify their decision to deviate from them. See *In re Marriage of Marcus and Ording*, No. 111,811, 2015 WL 3632435, at *9 (Kan. App. 2015) (unpublished opinion) (discussing the Johnson County Family Law Guidelines). Therefore, Carrie's insistence that the district court absolutely needed to include depreciation and other income in the maintenance award is misplaced.

That said, the district court elected to follow the DCFLG in all other aspects of the maintenance award. And while maintenance awards in general need only be "fair, just and equitable under all circumstances," the formula from the DCFLG envisions including depreciation and other income as in the Guidelines. See K.S.A. 2012 Supp. 23-2902(a); DCFLG § 3.01. The district court's only justification for deviating from the DCFLG was that maintenance, unlike child support, need not include depreciation—a justification unsupported by the DCFLG's plain language. DCFLG § 3.01 ("The definition of gross income [for the calculation of spousal maintenance] is as defined in by the Kansas Child Support Guidelines."). Despite the large amount of discretion afforded the district court in awarding maintenance, we agree with Carrie that this aspect of the decision is arbitrary.

Accordingly, we remand the order regarding spousal maintenance and ask the district court to reconsider its decision to exclude depreciation from maintenance and, as with the previous appeal, if it believes a deviation is "fair, just and equitable" explain its rationale for deviating from the DCFLG. See *Sinks I*, 2014 WL 4627495, at *6. This should not be interpreted as a license to reexamine the depreciation amount, merely whether the depreciation amount included in income for child support purposes should be justifiably excluded from the income calculation for spousal maintenance purposes.

15

*The district court erred in granting Larry travel expenses for visits to his daughter in Texas*.

Finally, Carrie argues that the district court erred in granting Larry travel expenses for any potential visits to Texas. She specifically contends that because Larry had no official court-ordered parenting time at the time of the move, he is not entitled to any travel reimbursements.

The Guidelines provide for several adjustments to a parent's basic support obligation. These adjustments, listed in Guidelines, § IV.E. (2015 Kan. Ct. R. Annot. 126), "apply only when requested by a party," and "[t]he party requesting the adjustment is responsible for proving the basis for the adjustment." The allowed adjustment, "if any," is then entered in the parties' child support worksheet. Guidelines, § IV.E. (2015 Kan. Ct. R. Annot. 126). At issue in this case is the long-distance parenting time cost adjustment, which allows for consideration of "[a]ny substantial and reasonable long-distance transportation/communication costs directly associated with parenting time." Guidelines, § IV.E.1. (2015 Kan. Ct. R. Annot. 126). Because the decision to allow a child support adjustment is discretionary one, this court reviews the issue for an abuse of that discretion. See *In re Marriage of McPheter*, 15 Kan. App. 2d 47, 48, 803 P.2d 207 (1990).

Preliminarily, Carrie argues that Larry never requested any child support adjustments for his potential visits to Texas. And a review of the record supports this contention. At the hearing, Larry candidly admitted that visits would present financial difficulties, but he never formally requested an adjustment to his child support obligation. As such, the district court essentially granted him the adjustment *sua sponte*, which appears to run afoul of the Guidelines. See Guidelines, § IV.E. (2015 Kan. Ct. R. Annot. 126).

16

But even if this court considers that single reference as a request for a travel expense adjustment, the district court's decision presents two other problems. First, Larry never "prov[ed] the basis for the adjustment" as required by the Guidelines. Guidelines, § IV.E. (2015 Kan. Ct. R. Annot. 126). He presented no testimony about the potential costs of visiting his daughter other than vaguely implying that he would not be able to stay with her and Carrie. Without detailed information about these potential travel costs, the district court's order essentially allows Larry to claim prospective, unspecified credits to his child support obligation. Given that the Guidelines envisions travel expenses being included as part of the parties' child support calculation, this rather hazy method of permitting travel expenses is at odds with our Kansas law. Guidelines, § IV.E.1. (2015 Kan. Ct. R. Annot. 126).

Second, and more importantly, the long-distance costs covered by the adjustment are those "directly associated with parenting time." Guidelines, § IV.E.1. (2015 Kan. Ct. R. Annot. 126). But as the parties agree and as noted by the district court, Larry had no court-ordered parenting time at the time of the move. Although the record is clear that Larry and his daughter saw one another occasionally and were working to improve their relationship, Larry had no actual parenting time to exercise. And as Larry had no parenting time, no costs can be "directly associated with" his exercise of that time. Guidelines, § IV.E.1. (2015 Kan. Ct. R. Annot. 126).

As noted earlier, use of the Guidelines is mandatory in a divorce action, and failure to follow them is reversible error. *In re Marriage of Thurmond*, 265 Kan. 715, 716, 962 P.2d 1064 (1998). Here, the district court clearly failed to follow the procedural mechanisms for granting a child support adjustment for long-distance parenting costs. See Guidelines, § IV.E. (2015 Kan. Ct. R. Annot. 126). Accordingly, we find it necessary to vacate the order granting travel expenses.

*We deny Larry's request for attorney fees.*

After oral argument in this case, Larry filed a timely motion for attorney fees pursuant to K.S.A. 2015 Supp. 23-2715 and Supreme Court Rule 7.07(b) and (c) (2015 Kan. Ct. R. Annot. 72). This court has authority to award attorney fees for services on appeal in cases where the district court had authority to award attorney fees. Supreme Court Rule 7.07(b)(1) (2015 Kan. Ct. R. Annot. 72). Additionally, K.S.A. 2015 Supp. 23-2715 grants the trial court authority to award attorney fees to either party in an action for dissolution of marriage as justice and equity require. After considering the arguments of counsel, we determine that an award of attorney fees is not required by justice or equity in this case and, accordingly, we deny said request.

In sum, we reverse the district court's decision to reconsider the previously approved $100,000 for marital debt and order that amount to stand with no additional credit to Larry. This court affirms the district court's calculation of Larry's income for child support purposes. We remand for the district court to reconsider its decision to exclude expenses from Larry's income for spousal maintenance purposes which it had included for child support purposes. Furthermore, we vacate the district court's *sua sponte* order granting Larry travel expenses as a credit against child support for potential visits to Texas. And finally, we deny Larry's request for attorney fees.

Affirmed in part, reversed in part, vacated in part, and remanded with directions.